CHARLES HENRY WEST, Deceased; MRS. CHARLES HENRY WEST, Widow; and NELLIE WEST, Minor; Dependents of CHARLES HENRY WEST, Deceased, v. EAST COAST FERTILIZER COMPANY, and EMPLOYER'S LIABILITY ASSURANCE CORPORATION.

(Filed 28 October, 1931.)

1. **Master and Servant F i—Findings of fact of Industrial Commission are conclusive when supported by sufficient evidence.**

   The findings of fact of a member of the Industrial Commission in a hearing before him under the Workmen's Compensation Act, approved by the full Commission on appeal, are conclusive upon the courts when supported by any sufficient evidence.

2. **Master and Servant F b—Evidence held to sustain finding that injury was from accident arising out of employment.**

   Where there is evidence tending to show that the deceased received the injury that caused his death while on duty as a night watchman in defendant's manufacturing plant, and that he had been robbed by his assailant when the injury was inflicted, is sufficient to sustain a finding by the Industrial Commission that the injury was received in the course of, and arising out of the employment and the award for compensation by the Industrial Commission will be sustained.

Appeal by defendant from *Midyette, J.,* at May Term, 1931, of New Hanover. Affirmed.

This is an action brought under the Workmen's Compensation Act by the dependent widow and daughter of Charles Henry West, deceased, to recover compensation for the death of their husband and father, who received injuries, from which he died while in the employ of the defendant, East Coast Fertilizer Company, as a night watchman.

The facts: Charles Henry West, who was employed by the East Coast Fertilizer Company, as a night watchman, at a salary of $20.00 per week, reported for duty at the warehouse of the defendant on the evening of 4 July, 1930, and was found with a big hole in his head, and a piece of iron lying near him, about 6:30 a.m., 5 July, 1930, by one Robert Shaw. The deceased was found just inside the warehouse of the defendant, lying behind a closed door. There are two doors on the shed at this point, but only one was closed. The watchman's time clock was on the deceased at the time of the injury, and the key was in the clock, having broken loose from the post when West was injured. At the time West was found he said something fell on him; something it seemed fell all over him; it was done so quick he didn't know what it was. His watch pocket was turned wrong side out, and $1.20, which he said he had, was missing. He had been paid off Thursday evening, 3 July, 1930. Tracks were seen in the dirt outside of the warehouse leading from the river, on the outside of the railroad track to the platform, going in.

Mrs. Charles Henry West is the widow of the deceased, and Nellie West is the daughter of the deceased, under 18 years of age. Both the widow and daughter were wholly dependent upon the deceased.

The North Carolina Industrial Commission allowed award to plaintiffs. Defendants appealed to the Superior Court. The court below affirmed the award, and defendants excepted, assigned error and appealed to the Supreme Court.

*Burney & McClelland for plaintiffs.*
*Carr, Poisson & James for defendants.*

CLARKSON, J. On the hearing before the full Commission, we find: "The full Commission has carefully reviewed the evidence in this case and we are of the opinion that the claimants are entitled to recover and the full Commission adopts as its own the findings of fact, conclusions of law and award of the hearing Commissioner and directs that compensation in this case be paid by the defendants."

The finding of fact by the hearing Commissioner, adopted by the full Commission, is as follows: "On 5 July, 1930, Charles Henry West, while regularly employed by the East Coast Fertilizer Company, at an

average weekly wage of $20.00, suffered an injury by accident arising out of and in the course of his employment. As a result of the injury by accident on 5 July, 1930, the employee·died on 12 July, 1930. At the time of the injury by accident and the death of the deceased employee, he had dependent upon him for support his wife, Mrs. Chas. Henry West, and one daughter, Nellie West, both were wholly dependent upon the deceased for support."

"The award of the Commission, as provided in section fifty-eight, if not reviewed in due time, or an award of the Commission upon such review, as provided in section fifty-nine, shall be conclusive and binding as to all questions of fact." Public Laws 1929, chap. 120, part sec. 60.

In *Southern v. Cotton Mills Co.*, 200 N. C., at p. 165, it was held: "The findings of fact of a member of the Industrial Commission in a hearing before him under the Workmen's Compensation Act, approved by the full Commission upon appeal, is conclusive upon the courts when supported by any sufficient evidence."

We think there was sufficient evidence to support the finding of the full Commission that the death of Charles Henry West was "by accident arising out of and in the course of the employment." Public Laws 1929, chap. 120, part sec. 4.

In *Harden v. Furniture Co.*, 199 N. C., at p. 736, we find: "In the present appeal we do not find any fact or circumstance indicating any causal connection between the conditions under which the deceased was working and the injury he suffered, or by which we may trace the injury to the employment of the deceased as a contributing proximate cause. . . . The motive which inspired the assault was unrelated to the employment of the deceased and was likely to assert itself at any time and in any place. In this respect the present case differs from those cases in which the injury complained of was directly traceable to and connected with the employment."

This case is different from the *Harden case, supra*. In that case there were domestic troubles and ill-will between the men arising out of the domestic troubles. In the present case, there was evidence that the injury complained of was directly traceable to and connected with the employment.

In *American Mutual Liability Ins. Co., et al., v. Herring*, (Ga.) (filed 20 April, 1931, writ of *certiorari* denied 24 June, 1931), 158 S. E., at p. 449, the Court said: "Herring was employed by Southeastern Compress and Warehouse Company as night watchman at its plant in Athens, Ga., and the evidence authorized the inference that while going upon his regular round he was shot and injured by some person whose only motive was to commit a robbery upon him. The evidence warranted

also a finding that owing to the location of the plant, together with the nocturnal and solitary nature of the employment, the employee was subjected to special danger from persons inclined to robbery or other violence, and thus that the particular injury arose out of the employment."

In the matter of the claim of *Nellie Heidemann v. Amer. Dist. Tel. Co.,* 230 N. Y., 305, it was held: (Headnote)"A night watchman employed by a corporation engaged in the business of furnishing its subscribers with protection against burglary, whose duty was to patrol the streets in a given section of the city, try the doors, and keep watch and ward until relieved, and who, while engaged in this work was killed by a shot fired by a police officer then in pursuit of burglars, died in the performance of his duty and from a peril arising out of and in the course of his employment and an award for his death is properly granted under the Workmen's Compensation Law." *Justice Cardozo,* writing the opinion of the Court, at p. 307, says: "For him, in a measure not common to the public generally, there was exposure to the perils that come from contact with the criminal and lawless. . . . (p. 308.) Causal and irregular is the risk of the belated traveler, hurrying to his home. Constant, through long hours, was the risk of Heidemann, charged with a duty to seek where others were free to shun. The difference is no less real because a difference of degree. The tourist on his first voyage may go down with the ship if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home. The night too has its own hazards, for watchman and for wayfarer. Death came to Heidemann in the performance of his duty, face to face with a peril to which the summons of that duty called him."

West, by the character of his occupation, was brought "within the zone of special danger." Being a watchman, a menace usually flows therefrom, and he was exposed to contact with the thief, burglar, trespasser—his was a dangerous calling. He was on duty, looking after his master's premises, and the evidence indicates that he died in the master's service. The statute under the facts disclosed in this case should have a broad and liberal interpretation, and we so give it. The judgment below is

Affirmed.