DONNIE MARIE HARRIS, WIDOW; DONNIE MARIE HARRIS, GUARDIAN AD
    LITEM OF KENA DENISE HARRIS AND SONYA HARRIS, DAUGHTERS OF
    RODNEY GEORGE HARRIS, DECEASED, PLAINTIFFS v. HENRY'S AUTO
    PARTS, INC., EMPLOYER AND NATIONWIDE MUTUAL INSURANCE COM-
    PANY, CARRIER, DEFENDANTS

No. 8110IC802

(Filed 4 May 1982)

**Master and Servant § 55.5 — workers' compensation — shooting death of service
    station attendant — motive not established — presumption that death arose out
    of employment**

There was a presumption or inference that the death of a night attendant
at a self-service gas station who was shot to death during his work hours on
the station premises arose out of his employment where all of the station's
money and inventory were accounted for and no motive for the killing was
established, and evidence that two rifle casings were found outside a fence
which surrounded the station premises, thus suggesting that decedent may
have been ambushed, and evidence that decedent had previously been shot by
a girlfriend did not rebut such presumption.

APPEAL by defendants from North Carolina Industrial Com-
mission. Opinion and Award entered 7 May 1981. Heard in the
Court of Appeals 31 March 1982.

Defendants appeal from Commission's award of Workers'
Compensation benefits to the widow and children of an employee
who was shot and killed on company premises while he was at
work.

*Tuggle, Duggins, Meschan, Thornton & Elrod, P.A., by
Joseph E. Elrod, III and Arthur A. Vreeland, for defendant ap-
pellants.*

*Nathaniel Currie, for plaintiff appellee.*

BECTON, Judge.

This claim for Workers' Compensation benefits arises from
the following facts. Until his death, Rodney George Harris was
employed by Henry's Auto Parts, Inc. as a service station attend-
ant on the 10:00 p.m.-7:00 a.m. shift. His duties included collecting
money from persons purchasing gasoline and selling convenience
items. Harris' workplace was a keyhouse which was located
within the middle of the self-service gas pump islands. The back
of the property was enclosed by a six-foot fence. Adjacent to the

fence was a building which housed bathrooms, vending machines and storage places. There was a six-inch gap between the point where the roof and the fence met.

An inventory of goods was taken at 10:00 p.m. on 10 March 1979 when Harris reported for work. A customer found Harris lying in a pool of blood halfway between the keyhouse and the vending building around 11:00 p.m. An investigation later produced two rifle casings which were found in the grassy area behind the wooden fence. Harris died as a result of a bullet wound. No motive for the shooting could be gleaned from the circumstances. There was no evidence of a robbery; all of the inventory and money was accounted for. At best, the police could opine that Harris was ambushed.

The Commission awarded benefits to the deceased's widow and children. It concluded that:

On March 10, 1979, Rodney George Harris sustained an injury by accident arising out of and in the course of his employment with defendant employer resulting in his death on the same date. When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most Courts will indulge a presumption or inference that death arose out of the employment.

On this appeal, defendant contends that (1) "the record does not contain evidence sufficient to sustain the finding and conclusion of the Industrial Commission . . . ;" and (2) that "in the absence of evidence sufficient to sustain a finding and conclusion by the Industrial Commission that the injury to the employee 'arose out of' the employment, a 'presumption' or 'inference' [does not] exist which is sufficient to carry plaintiff's burden of proof on that issue." We disagree.

In order for a claimant to recover Workers' Compensation benefits, he must prove that his injury was (1) by accident; (2) arising out of his employment; and (3) in the course of the employment. G.S. 97-2(6). The claimant has the burden of proving each of these elements. *Henry v. Leather Co.*, 231 N.C. 477, 479, 57 S.E. 2d 760, 761 (1950). This case requires resolution of a dispute regarding only one of the elements, the "arising out of" element.

Our courts have allowed recovery to employees' families when it has been shown that the death of the employee was either related to the employment or that the employment was of the nature which would subject the employee to peril. *See Taylor v. Twin City Club,* 260 N.C. 435, 132 S.E. 2d 865 (1963); *Goodwin v. Bright,* 202 N.C. 481, 163 S.E. 576 (1932).

> An injury is said to arise out of the employment when it occurs in the course of the employment and is a natural and probable consequence or incident of it, so that there is some causal relation between the accident and the performance of some service of the employment. [Citation omitted.] An injury arises out of the employment when it comes from the work the employee is to do, or out of the service he is to perform, or as a *natural result of one of the risks of the employment*; the injury  must spring from the employment or have its origin therein. [Citation omitted.] There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected.

260 N.C. at 438, 132 S.E. 2d at 868 (emphasis added).

> [I]t is suggested that the term "arising out of the employment" is perhaps not capable of precise definition; and *In re Employers' Liability Assurance Corporation,* 102 N.E., 697, the Supreme Judicial Court of Massachusetts remarked that it is not easy to give a definition of the words accurately including all cases within the act and precisely excluding those outside its terms. In the latter case it is said: "It (the injury) arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes

from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

*Harden v. Furniture Co.*, 199 N.C. 733, 735, 155 S.E. 728, 729-30 (1930). *See also Bartlett v. Duke University*, 284 N.C. 230, 233, 200 S.E. 2d 193, 195 (1973); *Robbins v. Nicholson*, 281 N.C. 234, 239, 188 S.E. 2d 350, 354 (1972).

[However,] when the moving cause of an assault upon an employee by a third person is personal, or the circumstances surrounding the assault furnish no basis for a reasonable inference that the nature of the employment created the risk of such an attack, the injury is not compensable. This is true even though the employee was engaged in the performance of his duties at the time, for even though the employment may have provided a convenient opportunity for the attack it was not the cause.

*Id.* at 240, 188 S.E. 2d at 354.

In this case, the answer to the question — whether the employee's death arose out of his employment — is made more difficult by the fact that the employee's death was unexplained. He was shot from the rear and was found halfway between the keyhouse and the vending machines. No motive for the killing has been discovered. While there is evidence that the employee was killed by ambush, this is basically a case of an unexplained violent death.

When an employee is found dead under circumstances indicating that death took place within the time and space limits of employment, in the absence of any evidence of what caused the death, most courts will *indulge a presumption* or inference *that death arose out of the employment*. The theoretical justification is similar to that for unexplained falls and other neutral harms: The occurrence of the death within

the course of employment at least indicates that employment brought deceased within range of the harm, and the cause of harm being unknown, is neutral and not personal. The practical justification lies in the realization that, when the death itself has removed the only possible witness who could prove causal connection, fairness to the dependents suggests some softening of the rule requiring claimant to provide affirmative proof of each requisite element of compensability.

1 Larson, Workmen's Compensation, § 10.32.

The presumption or inference of which Larson speaks is a rebuttable one, arising only if there is no evidence of what caused the death. *State Compensation Fund v. Delgadillo,* 14 Ariz. App. 242, 243, 482 P. 2d 491, 492 (1971). It is clearly established in this case that the employee's death was caused by wounds inflicted by gunshot from a third party. What is not established is the motive for the shooting. There is no evidence relating to a motive. It is most likely that the employee was shot by a person standing behind the wooden fence.

Our Supreme Court has held that death by violence raises the presumption that the death arose out of the employment when the employee is found at his place of employment during the time which he was to be working. In *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324 (1939), it was held that a town's police chief's death was accidental, rather than suicidal, and compensable under the Workmen's Compensation Statute. The police chief was found shot to death by his own gun, in a manner which suggested that the wound was self-inflicted, in a small room in the town building with its door and windows locked. There the Court stated:

> While the burden of proof is upon those claiming compensation throughout to prove death of employee resulting from injury by accident arising out of and in the course of his employment, when evidence of violent death is shown, they are entitled at least to the benefit of the inference of accident from which, nothing else appearing, the Commission may find, but is not compelled to find, the fact of death resulting from injury by accident, a constituent part of the condition antecedent to compensation, injury by accident arising out of and in the course of employment. In other words, this in-

ference is sufficient to raise a *prima facie* case as to accident only. Then if employer claims death of employee is by suicide, the statute places the burden on him to go forward with proof negativing the factual inference of death by accident.

*Id.* at 754, 3 S.E. 2d at 326.

In *Goodwin v. Bright*, 202 N.C. 481, 163 S.E. 576 (1932), the Court awarded benefits to the dependents of an employee who was required to report to work earlier than other employees in order to fire up the machinery. The employee was killed by an unknown person or persons who stole his money and his automobile but did not steal or injure the employer's property. The Commission found that the death arose out of the employment. The Court agreed and stated that: " 'The mere fact that the injury is the result of the wilful or criminal assault of a third person does not prevent the injury from being accidental. *Conrad v. Foundry Co.*, 198 N.C. 723, 153 S.E. 266.' " 202 N.C. at 484, 163 S.E. at 577 *quoting Harden v. Furniture Co.*, 199 N.C. 733, 734, 155 S.E. 728, 729. In affirming the award, the Court noted that: "Here the deceased employee . . . was exposed by the terms of his employment to a hazard which might have been contemplated by a reasonable person as incidental to the service required of him by his employer." 202 N.C. at 484, 163 S.E. at 577-78.

Similarly, in *West v. Fertilizer Co.*, 201 N.C. 556, 160 S.E. 765 (1931), the Court upheld an award to the dependents of a night watchman who died from a wound received when he was hit in the head with a piece of iron by an unknown assailant who also robbed him. The Court stated that "there was evidence that the injury complained of was directly traceable to and connected with the employment." *Id.* at 558, 160 S.E. at 766. The Court emphasized the nature of the night watchman position and stated that the job brought him "within the special zone of danger." *Id.* at 559, 160 S.E. at 766.

Mr. Harris' death was unexplained. Because he was found dead on the premises of his employment at a time when he should have been there, we indulge a presumption or inference that his death arose out of the employment. We do so even though there is evidence that he was shot by ambush and that he had been shot in the past by a girlfriend. Officer Weldon was asked

whether this girlfriend was implicated; he responded, "[w]e have no proof." It appears to us, therefore, that any evidence introduced by the defendant regarding a personal motive for the shooting was eviscerated by the testimony by Officer Weldon.

The deceased's job was of a nature which would subject him to peril. Personal injury to the employee during his work hours was a "natural result of one of the risks of the employment." 260 N.C. at 438, 132 S.E. 2d at 868. Mr. Harris worked the night shift at the self service gas station. He was the sole employee on duty in, what the record shows was, a high crime area. We are unable, as was the Commission, to determine that the motive for the shooting was personal and not job related. There simply is no explanation for the death. Absent a confession by the assailant or the emergence of an eye witness, any reason given for the death of Mr. Harris would be based on conjecture and speculation.

The case *sub judice* is distinguishable from *Robbins v. Nicholson, Harden v. Furniture Co.* and *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977), which were cited by appellants. In each of the above cases, the cause of death, as well as the motivation for the killing, was well established by the evidence. If anything, the facts of those cases made it clear that the place of employment only provided a convenient place for the murder of the employees. In each of the cases "[t]he motive which inspired the assault was unrelated to the employment of the deceased and was likely to assert itself at any time and in any place." 199 N.C. at 736, 155 S.E. at 730. We cannot say as much for the shooting in the present case, however, as the Commission was unable to determine the motive for the killing.

For the foregoing reasons the judgment below is

Affirmed.

Judge WELLS and Judge HILL concur.