LENORA W. GILBERT, MOTHER; JAMES GILBERT, DECEASED, EMPLOYEE, PLAIN-
TIFF v. B & S CONTRACTORS, INC., EMPLOYER, AND NATIONWIDE INSUR-
ANCE CO., CARRIER, DEFENDANTS

No. 8510IC700

(Filed 3 June 1986)

1. **Master and Servant § 55.5— workers' compensation—unexplained death—no presumption that death arose from employment**

    A workers' compensation claimant was not entitled to a presumption that an unexplained death arose out of the employment and was compensable where the employee's death was not a violent death and was not unexplained in that an expert witness testified that the most likely cause was severe coronary artery disease.

2. **Master and Servant § 47.1— presumption that close cases decided in employees' favor—not valid**

    A workers' compensation claimant was not entitled to a presumption that close cases should be decided in the employee's favor where the supporting case law concerned the issue of whether an employee was acting for the benefit of his employer, the issue here was whether the employee's death was caused by coronary artery disease or electrical shock, and there was no evidence that the employee ever came into contact with any charged electrical conduits.

**3. Master and Servant § 55.5— workers' compensation—failure to find compensable death—no error**

The Industrial Commission did not err by failing to conclude as a matter of law that an employee's death was caused by an injury or accident arising out of and in the course of his employment where the employee died of either an electrical shock or coronary artery disease and the evidence from which the Commission could have found that death was caused by an electrical shock was virtually nonexistent.

APPEAL by plaintiff from Order of North Carolina Industrial Commission entered 9 January 1985. Heard in the Court of Appeals 3 December 1985.

*Joseph B. Roberts III and Stephen T. Gheen for plaintiff appellant.*

*Hedrick, Eatman, Gardner & Kincheloe by Martha W. Surles for defendant appellees.*

COZORT, Judge.

James Gilbert, a 34-year-old cablevision lineman, was found dead at the base of a utility pole by two co-workers. The examining pathologist attributed the probable cause of death as marked atherosclerotic coronary artery disease, noting, however, that "the possibility of a low voltage injury cannot be completely excluded." The North Carolina Industrial Commission denied Gilbert's mother's claim for workers' compensation benefits, ruling that Gilbert's death was not compensable under the Workers' Compensation Act. We affirm. The facts follow.

James Gilbert, Dennis Lawing and Donald Herman were working as a three-man crew putting up cable for television on utility poles on Davis Park Road in Gaston County on the morning of 11 June 1982. They were "pulling" the cable, running it along the side of the road prior to climbing the pole to attach the cable to the pole. Lawing and Herman had gone on down the road around a curve. Gilbert had stayed behind at the utility pole, out of the vision of Lawing and Herman, watching for cars which would need to slow down before going around the curve where Lawing and Herman were pulling the cable. When Lawing and Herman came back around the curve, Gilbert was lying near the utility pole, apparently dead. Lawing did not recall hearing anything or seeing any sparks. Herman did not observe any blood

Gilbert v. B & S Contractors, Inc.

on Gilbert's shirt. Lawing ran to a house down the road to have an ambulance called. When the ambulance arrived, emergency medical technicians attempted to revive Gilbert with cardiopulmonary resuscitation, to no avail. Gilbert was pronounced dead in the emergency room at Gaston Memorial Hospital, without ever having regained consciousness.

The pathological examination was conducted by Dr. Jon F. Gentry. He testified he found two things: "very severe significant coronary artery disease," and "blood in his stomach." He testified he could find no anatomic basis for the blood in the stomach: "I just mentioned it as a finding because it is a finding. What it means, I don't know." Dr. Gentry also found abrasions on the front of each leg below the knee. He testified that the most probable and the most likely cause of death was the coronary artery disease, which he described as severe enough to narrow the vessels such that the flow of blood in the heart was restricted to only 25 to 30 percent of normal. He was asked whether "a low voltage shock could or might have caused [Gilbert's] death and the blood in his stomach." Dr. Gentry testified:

[T]here is a possibility. I can't exclude it. . . .

\*    \*    \*    \*

[T]here were no wounds about the body.

\*    \*    \*    \*

[A] person may die of a low-voltage injury and there's nothing there you can see inside that body. . . .

\*    \*    \*    \*

. . . I was looking for evidence of electrical injury which I did not find in terms of the examination . . . .

\*    \*    \*    \*

I don't have physical evidence to indicate such, but a low-voltage injury you may not see physical damage to the body like burns. . . . I can't exclude that.

The Deputy Commissioner for the Industrial Commission denied the claim, finding that Gilbert "died as a result of very severe and significant coronary artery disease that was neither

caused by, aggravated by or otherwise related to his employment. [Gilbert's] death was not proximately caused by an injury by accident arising out of and in the course of his employment with defendant/employer." The Full Commission adopted as its own and affirmed the Deputy Commissioner's Opinion and Award.

On appeal, claimant contends the Commission erred by failing to accord to claimant two "presumptions of law" to which she was entitled: (1) "upon an unexplained death of an employee . . . an evidentiary presumption or inference exists that the death arose out of the employment and is compensable"; and (2) "in close cases benefit of the doubt as to the issue of whether the injury arose out of and in the course of employment should be decided in the employee's benefit in accordance with [the] established policy of liberal construction and application of the Workers' Compensation Act." We disagree.

[1] Claimant contends she was entitled to the first presumption that, upon an unexplained death, there is an inference the death arose out of the employment and is compensable, relying on her interpretation of *Harris v. Henry's Auto Parts, Inc.*, 57 N.C. App. 90, 290 S.E. 2d 716, *disc. rev. denied*, 306 N.C. 384, 294 S.E. 2d 208 (1982). Claimant's reliance on *Harris* is misplaced. In *Harris*, we held that there was a presumption in claimant's favor where a night attendant at a self-service gas station was shot to death during his work hours on the station premises. The death was unexplained; there was no evidence of robbery or any other motive for the killing. In reviewing three North Carolina Supreme Court cases where an inference of compensable death was allowed, we stated that "[o]ur Supreme Court has held that *death by violence* raises the presumption that the death arose out of the employment when the employee is found at his place of employment during the time which he was to be working." *Id.* at 94, 290 S.E. 2d at 719 [emphasis added]. The presumption is a rebuttable one and arises only if there is no evidence of what caused the death. *Id.*, 290 S.E. 2d at 718. There are two reasons the case below is not covered by the rules set forth in *Harris*. First, Gilbert's death was not a "violent" death, as was the case in *Harris*. Second, Gilbert's death was not unexplained because the expert witness, Dr. Gentry, gave an explanation for Gilbert's death: the most likely cause was severe coronary artery disease. We hold the claim-

ant was not entitled to a presumption that Gilbert's death arose out of his employment.

[2]   In her argument that she was entitled to a presumption that "close cases . . . should be decided in the employee's benefit," claimant cites *Hoffman v. Ryder Truck Lines, Inc.*, 306 N.C. 502, 293 S.E. 2d 807 (1982). Again, we find claimant's reliance on case law to be misplaced. In *Hoffman*, the court found an injury to be compensable where the primary issue to be resolved was "whether or not the employee was acting for the benefit of his employer 'to any appreciable extent' when the accident occurred." *Id.* at 506, 293 S.E. 2d at 810, *quoting Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955). The court held that "[s]uch a determination depends largely upon the unique facts of each particular case, and, in close cases, the benefit of the doubt *concerning this issue* should be given to the employee in accordance with the established policy of liberal construction and application of the Workers' Compensation Act." *Id.* [Emphasis added.] We face a substantially different issue in this case. The issue is whether Gilbert's death was caused by coronary artery disease (not compensable) or electrical shock (compensable). The testimony from the examining pathologist was that the most probable and most likely cause of death was coronary artery disease, though he could not "exclude" the possibility that Gilbert could have died from a low-voltage electrical shock. In our review of the record, we find no evidence that Gilbert ever came in contact with any charged electrical conduits. In fact, there is no evidence that he had even climbed the utility pole prior to his death. Given the record before us, we decline to hold that the claimant is entitled to a presumption that the case should be decided in the employee's benefit because the examining pathologist could not rule out the possibility of low-voltage electrical shock.

[3]   We lastly consider claimant's contention that this case is analogous to *Snow v. Dick & Kirkman, Inc.*, 74 N.C. App. 263, 328 S.E. 2d 29, *disc. rev. denied*, 314 N.C. 118, 332 S.E. 2d 484 (1985), where we affirmed the Industrial Commission's finding of a compensable death. There, a 29-year-old electrician fell over dead while working on a large electrical control panel containing about a hundred terminals, some of which were energized with 277 volts of electricity. No one heard any popping noises or saw any sparks. No burn marks were found on the body. The evidence showed

Gilbert v. B & S Contractors, Inc.

that the electrician was seen by a fellow employee sitting in front of the panel on a wire reel spool holding a screwdriver. The next time he was seen, he was lying on the floor with his right leg drawn up as if in a cramp, and his jaws were clinched so tightly they had to be forcibly pried apart before mouth-to-mouth resuscitation could be administered. The electrician had mildly hardened coronary arteries. Two doctors testified as to the cause of death. They agreed that the cause of death was a disorganized, erratic heartbeat caused by either sudden heart failure or an electrical shock. One doctor was of the firm opinion that the chances of death from an electrical shock were far greater than the chances of sudden death due to the fairly minimal coronary arteriosclerosis. The other doctor was of the opinion that sudden, spontaneous heart failure was the more likely cause. We upheld the Commission's finding of a compensable death caused by an accidental electrical shock.

It is readily apparent that the case below is distinguishable from *Snow*. The evidence from which the Commission could have found Gilbert's death was caused by an electrical shock is, in the instant case, virtually nonexistent.

In order for a claimant to recover Workers' Compensation benefits, he must prove that his injury was (1) by accident; (2) arising out of his employment; and (3) in the course of the employment. G.S. 97-2(6). The claimant has the burden of proving each of these elements. *Henry v. Leather Co.*, 231 N.C. 477, 479, 57 S.E. 2d 760, 761 (1950).

*Harris v. Henry's Auto Parts, Inc., supra*, at 91, 290 S.E. 2d at 717. We cannot say, on the record before us, that the Commission erred as a matter of law in failing to conclude that Gilbert's death was caused by an injury by accident arising out of and in the course of his employment.

The employer and the insurance carrier cross-appealed, alleging error in the Commission's findings and conclusions that an employer-employee relationship existed between B & S Contractors and Gilbert, and alleging error in the admission of certain evidence. With our having affirmed the Commission's decision denying the claim, we deem it unnecessary to address the cross-appeal.

The Opinion and Award of the Industrial Commission is

Affirmed.

Judges WEBB and BECTON concur.