In accordance with the directives of the North Carolina Court of Appeals, the undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to the provisions of the North Carolina Workers Compensation Act.
2. Employees date of injury and death is June 20, 1996.
3. On the date of employees death, June 20, 1996, an employment relationship existed between employee and defendant.
4. Defendant is self-insured for its workers compensation liability, and the third party administrator is RISCORP of North Carolina.
5. Employees average weekly wage was $595.58 with a resulting compensation rate of $397.25.
6. The employee suffered a fatal heart attack while at work with the employer.
7. The parties stipulated to a package of medical records and I.C. Forms at the hearing which included the following:
(a) Oconee Memorial Hospital;
(b) EMS Report;
(c) Dr. James Hellams;
(d) Dr. Charles James;
(e) Charter Behavioral System of Asheville;
(f) Dr. Guyton Winker; and
(g) Death Certificate.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission makes the following:
 FINDINGS OF FACT
1. Julius Spencer Wall (hereinafter, decedent) was employed as a foreman for defendant on June 20, 1996.
2. Defendant was in the business of gas line construction and decedents primary duties as a foreman included general supervisory activities, operating a backhoe and trenchers, welding occasionally and making sure heavy equipment is transported from one work site to another on trailers pulled behind trucks. Decedent sometimes drove the truck which pulled heavy equipment to job sites, but it was the responsibility of other crew members to load the equipment and hitch the trailers to the truck for him.
3. On June 20, 1996 defendant had at least three work sites, one where Ricky Thomas was foreman, a second site near Townville, South Carolina, where decedent was foreman, and a third site where decedent was also foreman. Work at the second site was being finished up with a Ford cleanup tractor and work at the other two sites was underway.
4. On the morning of June 20, 1996 the Ford cleanup tractor needed to be transported from the second site to the third. Aubrey Long arrived first at the second job site to meet decedent for the purpose of picking up the Ford tractor and moving it to another site. A trailer was needed in order to move the tractor, but there was no trailer at the second job site where the tractor was located. It was decedents job to make sure the heavy equipment needed was available at his job sites. When decedent arrived at the second job site to pick up the Ford tractor between 6:30 and 7:00 a.m., he had a trailer already hitched to the back of his truck. Decedent had gotten the trailer from the Ricky Thomas job site prior to his arrival at the second job site to pick up the Ford tractor.
5. The trailer that decedent was pulling with his truck on the morning of June 20, 1996 had a trailer hitch that had to be picked up off the ground and aligned with the ball on the rear of the truck in order to hitch. Usually the trailer hitch had to be moved back and forth to achieve alignment. The trailer had a pivot point and the tongue of the trailer had to be physically lifted in order to reach the pivot point. If lifted up too far, the weight of the trailer would shift all the way back and if not lifted far enough, the weight of the trailer would shift toward the ground. In order to hook the trailer, a person would have to bend down, pick up the trailer hitch with both hands and arms, stand, and maneuver the trailer in place for hitching. Some of the trailers defendant used had a jack which made hitching easier, but the jack was broken on the trailer decedent was pulling on June 20, 1996, requiring that the tongue of the trailer be physically picked up from the ground for hitching purposes. Although the exact weight of the trailer was not known by the witnesses who testified, the trailer was too heavy to be lifted ordinarily by one person, but it could be lifted by one person, when necessary.
6. Decedent and Aubrey Long drove the Ford tractor onto the trailer using ramps, secured the tractor onto the trailer and drove back to the Ricky Thomas job site. While at the Ricky Thomas job site, decedent complained of indigestion and got a Zantac from Ricky Thomas. During this same period of time (around 8:30 a.m.), decedent talked to his brother, Jim Wall, by telephone and was expected to meet his brother shortly thereafter at Hardees. Decedent did not stop at Hardees, but went immediately to the third job site to deliver the tractor, instead.
7. Decedent and his crew left the Ricky Thomas site around 8:30 a.m. enroute to the third site which was about ten minutes away. Decedent rode alone in his truck which was pulling the trailer while the crew drove in another vehicle. When decedent arrived, his son was on the telephone with his uncle, decedents brother. Decedent proceeded to get out of his truck and told the other workers to unload the tractor. After a brief exchange with his son, decedent turned around and placed his head on his truck and then fell over from an apparent heart attack.
8. Decedents son called for rescue assistance. Workers gave decedent CPR and transported him to Oconee Memorial Hospital where he was pronounced dead. The "History of Present Illness recorded by the hospital was not provided by decedent, but appears to have been provided by EMS based on their interpretation of information provided by family members at the scene. Plaintiffs brother did advise EMS of a telephone call he received from decedent concerning chest pains on 20 June 1996, but this call took place at 8:30 a.m. after decedent had been at work for more than an hour.
9. The immediate cause of death listed on the Certificate of Death was (a) "Cardiac Arrest and (b) "probable Acute Myocardial Infarction. The approximate interval between onset and death was "1 hour.
10. Decedents death occurred within the time and space limits of his employment and therefore arose in the course of his employment. Therefore, the claimant is entitled to a presumption that the death was the result of an accident and arose out of the employment. Defendant has the burden of rebutting both of these presumptions.
11. The cause of death decedents is known. Defendant must therefore show that decedents heart attack was not caused by conditions of his employment which would constitute an accident arising out of the employment.
12. If decedent hitched the trailer to his truck without assistance, such an exertion would have been unusual or extreme and could have precipitated his heart attack. The circumstances bearing on the work-relatedness of his heart attack are therefore unknown.
13. The trailer which decedent pulled between the sites on the morning of June 20, 1996 was particularly difficult to hook up. It had no operational jack with a wheel on it and therefore one had to pick the tongue up off the ground with both hands and use both arms because of the weight to lift and place the trailer on the hitch. The trailer had to be maneuvered back or forth or from side to side in order to fit it on the ball of the hitch.
14. Decedent did not have the trailer hitched to his truck when he arrived at his brothers camper at 10 p.m. the night before he died, but he did have it hitched to his truck when he met Aubrey Long between 6:30 a.m. and 7:00 a.m. the next morning at the second worksite where the Ford tractor which needed transporting was located. No evidence was offered that any one else hitched the trailer to decedents truck or assisted decedent in doing so. Defendant offered evidence that decedent had not been seen hitching a trailer to a truck at any time prior to 20 June 1996, and that hitching trailers was not decedents job responsibility. Based on reasonable inferences from the evidence and applying thePickrell presumption, see Pickrell v. Motor Convoy, Inc., 322 N.C. 363,367, 368 S.E.2d 582, 584 (1988), which is often utilized in death cases where the employee is not alive to tell what happened, the Full Commission previously found as a fact that decedent hitched the trailer to his truck without assistance. However, based on the decision and directive of the North Carolina Court of Appeals, the Full Commission now finds that the evidence presented will not support a reasonable inference that decedent attached the trailer to his truck by himself on the morning of his death. The Court of Appeals held that plaintiff had to present "direct evidence that decedent hitched the trailer by himself and that plaintiff cannot utilize the Pickrell presumption to carry its burden of proof that decedent sustained an unusual or extreme exertion.
15. Hitching the trailer to his truck without assistance would have required an unusual exertion due to the weight of the trailer and the fact that the jack was broken. Expert medical testimony has established that such an unusual exertion could have precipitated decedents heart attack; however, Dr. Leslie also stated that "probably [decedents] other risk factors led to the problems, more certainly than the activities. Although decedents heart attack could have come from decedents risk factors and it could have come from unusual exertion, the Court of Appeals found Dr. Leslies opinion that plaintiffs heart attack could have come from unusual or overexertion as too speculative since the evidence would not support a reasonable inference that overexertion or unusual exertion occurred. Therefore, plaintiff has not proven that decedents heart attack was caused by an accident arising out of his employment. The Court of Appeals also found that the Pickrell presumption could not be applied in this case because there was some evidence of what could have caused the death, and that even assuming it did apply, defendant rebutted that presumption by showing other risk factors more likely caused decedents heart attack instead of overexertion or unusual exertion. Therefore, in accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds that decedents heart attack was not caused by unusual or overexertion and did not arise out of his employment.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission makes the following:
 CONCLUSION OF LAW
1. To recover workers compensation benefits for death, a claimant must prove that death resulted from an injury "(1) by accident; (2) arising out of his employment; and (3) in the course of the employment. Harris v.Henrys Auto Parts, Inc., 57 N.C. App. 90, 91, 290 S.E.2d 716, 717, disc.review denied, 306 N.C. 384, 294 S.E.2d 208 (1982).
2. "When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of employment. Pickrell v. Motor Convoy, Inc., 322 N.C. 363, 367,368 S.E.2d 582, 584 (1988) (quoting 1 Larson, The Law of WorkmensCompensation 10.32 (1985)). "[T]he presumption is really one of compensability. It may be used to help a claimant carry his burden of proving that death was caused by accident, or that it arose out of the decedents employment, or both. Pickrell, at 368, 368 S.E.2d at 585.
3. "[W]here the circumstances bearing on work-relatedness are unknown and the death occurs within the course of employment, [plaintiffs] should be able to rely on a presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown. Pickrell, at 370, 368 S.E.2d at 586. In the present case the circumstances bearing on work-relatedness are unknown in that there was only circumstantial evidence that plaintiff hitched the trailer to his truck. The Full Commission, using reasonable inferences from the evidence, found that plaintiff did hitch the trailer to his truck without assistance and that this constituted an unusual or overexertion. The Court of Appeals found that the evidence would not support a finding that plaintiff hitched the trailer to his truck. Based on the directive of the Court of Appeals, the Full Commission concludes that defendant rebutted the presumption that plaintiffs death was caused by unusual or overexertion.
4. Based on the directive of the Court of Appeals, the Full Commission further concludes that the medical evidence is insufficient to prove plaintiffs heart attack was caused by unusual or overexertion. Therefore, decedents death was not caused by an accident arising out of his employment. Bason v. Kraft Food Service, Inc., N.C. App., 535 S.E.2d 606
(2000).
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 AWARD
1. Decedents claim for benefits under the Act must be and is hereby denied.
2. Each side shall bear its own costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER