I respectfully dissent from the majority decision in this matter to affirm the Opinion and Award of the Deputy Commissioner on the grounds that there is insufficient convincing medical evidence to prove by the greater weight that the plaintiff died as a result of an electrical shock.
Plaintiff heavily relies upon Blalock v. City ofDurham, 244 N.C. 208, 92 S.E.2d 758 (1956). which allows for "(i)nferences" that the non-witnessed death was by electrocution when such inferences are "reasonably drawn." Id. at 208, 92 S.E.2d at 758. However, for the following reasons, I would contend that the inferences upon which the majority base their decision are not reasonable.
The Associate Chief Examiner for the State of North Carolina, in performing the autopsy, found that the decedent had a "severe degree of coronary artery disease for a man of this age," found 85% blockages in two arteries and doubted that the decedent could "have survived ten years" with his diseased heart. The Associate Chief Examiner certified the decedent's death as due to coronary artery disease. The Chief Medical Examiner, certified for 20 years and who has performed between 3,000 and 4,000 autopsies, concurred in her opinion. The Chief Medical Examiner was convinced it was more likely the decedent died due to arrhythmia due to coronary disease than electrocution. However, the majority gives greater credibility to the testimony of the expert for the plaintiff, Dr. James Burton, Chief Medical Examiner for Atlanta, Georgia. Dr. Burton, who did not view the body and did not have an opportunity to view all of the evidence from the autopsy, nonetheless opined that the death was caused by electrocution. Dr. Burton testified that key factors to a proper diagnosis in cases such as this were if there was evidence the electrocution victim said "I've been shocked" or words to that effect; if there was a burn mark on the body; if there was a source of electricity; if the integrity of the scene was preserved; and, if the proper circumstances for an electrocution to occur exist. In fact, none of these factors are present in the present diagnosis. Further, while Dr. Burton's testimony indicates he places the burden of proof on the defendants to disprove that death was caused by electrocution, nonetheless, the appellate courts of North Carolina place the burden on the plaintiff of establishing a causal connection between the circumstances of the death and electrocution.
There is no evidence that the deceased came into contact with any power source. Rather, the majority infers the decedent was electrocuted by inferring the decedent came into contact with an exposed electrical wire. Yet, "it is certain that inferences cannot be based upon inferences." Petree v. Duke PowerCompany, 268 N.C. 419, 150 S.E.2d 749 (1966). The majority relies upon the speculation of the deceased's assistant, who only heard through the wall of the house the deceased talk after disconnecting the water, crawl closer to the wall to hear his assistant's question and then groan. The assistant did not see or hear anything else. The police officer who prepared the report on the scene indicated it as a "apparent electrocution." However, the officer testified his report was based on his conversation with the deceased's assistant, whose testimony was inconsequential, and that he could not recall the nature of any evidence of electrocution he noted in the report and he could not, in fact, confirm the decedent received an electrical shock. The electrical wiring in question was inspected the day of the death by a disinterested electrician who manually inspected the wiring from end to end. This electrician told the homeowners there was no "potentially dangerous situation." However, the majority gives greater weight to the testimony of an electrician hired by the plaintiff who inspected the wiring a month after the death. The plaintiff's electrician, without taking pictures of the scene first or the external condition of the wire and without obtaining Commission approval, cut a large section of the wire sheathing off to inspect the wire. This electrician found the wiring faulty. The length of time which passed between the death and the second inspection, and the fact the second electrician was hired by a relative of the widow severely lessens the weight of the second electrician's testimony. Further, finding of Fact # 8 is misleading in that it refers to the body being "tangled in wire," which implies the wire was electrically energized. Actually, the body was in telephone wire, not electrical wire.
Finally, it should be noted that the plaintiff filed her claim nearly a year after the death, and is thus far in excess of the statutorily proscribed 30 day limit.
In sum, absent any evidence the decedent suffered an electrical shock and given the decedent's severe heart condition, I do not believe it is a `reasonable inference' to substitute the judgments of a doctor who never inspected the body and an electrician who inspected the wiring a month after the fact for the judgments of the coroner who performed the autopsy and the electrician who manually inspected the site the day of the decedent's death. Based on the foregoing. I respectfully dissent.
 S/ _______________ DIANNE C. SELLERS COMMISSIONER