MRS. ELMA JONES PETREE, WIDOW OF THOMAS GILBERT PETREE, DECEASED, v. DUKE POWER COMPANY.

(Filed 2 November, 1966.)

1. **Master and Servant § 93—**

While the findings of fact of the Industrial Commission are conclusive when supported by any competent evidence, exception to a finding must be sustained when the finding is not supported by any competent evidence in the record.

2. **Trial § 22—**

An inference may not be based upon another inference.

3. **Evidence § 51—**

A hypothetical question to an expert may not assume as true a fact which is not in evidence.

4. **Master and Servant § 54— Testimony of expert upon hypothesis not supported by facts in evidence cannot support finding of Industrial Commission.**

The evidence tended to show that intestate in the course of his employment climbed a pole on which there was a transformer and wires, that a witness heard him utter a groan and looked up and saw intestate's body hanging by his safety strap, but did not see any sparks, flashes or smoke, or smell anything. There was evidence that intestate had a heart condition, and all of the evidence tended to show that at the time there was no current in the wires or transformer on the pole. *Held:* The evidence is insufficient to support a finding that an electric shock was a contributing cause of death, notwithstanding expert testimony based upon assumption not shown by the evidence that if intestate came into contact with an electric current the shock could have caused his death.

APPEAL by plaintiff from *Crissman, J.*, at December 19, 1965, Civil Session, DAVIDSON Superior Court.

Thomas Gilbert Petree was employed by Duke Power Company for some 38 years as an "A Class Service Man." His duties consisted of maintenance work and trouble shooting and required that he climb poles several times a week in connecting and disconnecting service to customers. He used pole climbers or hooks and a safety belt while working at the top of the poles. On 12 May, 1962, he went to the plant of Celand Yarn Company to disconnect the electrical power while Paul Sink, an electrical contractor, removed some switches. In connection with his work the deceased climbed a pole which had on it a transformer and several wires running to the cross-arm. One Toy Haywood who was working near by "heard some groans—just a loud groan" and he looked up and Mr. Petree was dead and hanging on the pole by his safety belt.

Upon examination of the body of the deceased the Coroner of Davidson County stated the cause of death was coronary occlusion, and with reference to the autopsy report, stated that "Examination revealed no burns on body or any evidence of electrical shock."

Further reference to the facts appears in the opinion.

Mr. Petree's widow filed claim with Duke Power Company for an award under the terms of the Workmen's Compensation Act. The hearing commissioner found that deceased was some 15 feet from the ground and close to the wires when he received an electrical shock which resulted in his immediate death, and concluded as a matter of law that he was injured by accident by electrocution arising out of and in the course of his employment. Upon appeal to the full commission his report was affirmed, and thereupon defendant appealed to the Superior Court of Davidson County, where the Court found that there was no competent evidence to support the award and reversed the Commission.

The plaintiff assigned errors and appealed.

*H. I. Spainhour and Schoch, Schoch & Schoch for plaintiff appellant.*

*George W. Ferguson, Jr., Carl Horn, Jr., Walser, Brinkley, Walser & McGirt for defendant appellee.*

PLESS, J. It is so well settled that if there is *any* evidence upon which the Commission can base its findings they must be upheld we need cite no authorities. But it is equally correct that the Commission's findings must be supported by *some* evidence.

To continue with more fundamentals: Deductions and opinions may be based only upon assumed facts — not inferences. And it is

certain that inferences cannot be founded upon inferences. Therein lies the weakness and fallibility of the plaintiff's case. Upon a hypothetical question she elicits an opinion from Dr. Max P. Rogers that the deceased came to his death from coming into contact with an electric current which then produced cardiac standstill. *But,* in order to obtain this answer, the hypothetical question assumes as true that which is not in evidence. In fact it presupposes the result the plaintiff must prove — that the deceased came into contact with static electricity. The question to Dr. Rogers was: "Doctor, if the Court should find from the evidence, by its greater weight, that Thomas Petree, in November, 1957, or prior thereto, had suffered a cardiac condition * * * and that the condition continued up to and through, including May 12, 1962, and that at that time he sustained a coronary occlusion having come into contact with electric current, do you have an opinion satisfactory to yourself and to a reasonable medical certainty what could have caused his death?" "A. I feel with reasonable medical certainty an electric shock could have caused his death." Another hypothetical question put to Dr. Rogers included the assumption that "he came into contact with static electricity" which produced the answer that "It would be my opinion that this man came into contact with an electrical current which then produced cardiac standstill resulting in death." Nowhere in the evidence is there anything to support the plaintiff's premise. On the contrary, the evidence is overwhelming (most of it being adduced on cross-examination of the plaintiff's witnesses) that all the current was disconnected which could have gone to the transformer or wires on the pole where Mr. Petree was working.

Summarizing the evidence of every witness to the event offered in behalf of the plaintiff we get the following: Toy Haywood first saw the body of deceased "hanging up there." He heard him groan and saw him on the pole, heard an "unh", but no kind of popping sound, nor did he see any sparks, flashes, or smoke, or smell anything.

Mrs. Bonnie Jordan of the High Point Enterprise arrived with her camera when the ambulance did. She said a Duke Power man arrived and said he did not think there was current, they wanted to be on the safe side but thought the power was cut on that pole, but he wanted to be sure there was no feedback, they were taking every precaution.

Lloyd Sink and a committee who inspected conditions reported that there was no possibility of any electrical connection between the two services leading in the building that would have caused a feedback from where Mr. Petree could have gotten an electrical shock.

The defendant offered positive evidence that the power was found disconnected after Mr. Petree died, and that there was no indication of any current in the transformer or any of the wires leading up to the cross-arm near Mr. Petree's body.

Paul Sink, who was working with the deceased, testified that he had cut off every one of the switches inside the building and that he saw the deceased pull off the three switches on the pole. After that he testified the deceased was just sitting there when he turned around to go back in the building. "When I got back to the switches, I loosened the lock nut and the bushing. Before I done that, though, I taken my bare hands and put on top of the switches, to see if there was any current on them, because I always did that when anybody was helping me, that they wouldn't get hurt. Then I taken the lock nut and bushing off. We dropped the switches down. No electrical current coming from the transformers out on the pole passed through those switches. If there was any coming, it would have to pass through those switches. I put my hands on them. I could have told whether there was any current coming through those switches, if it had been on there. If any current was passing from the old building back out to the position Mr. Petree occupied, it would have had to have passed through those switches. I could not feel any current coming through there. And then I took those switches down. I removed them completely."

He later testified: "I was present when the three inspectors, that is, Melvin Sink, George Jackson, and Lloyd Sink, together with Lindsey Loftin, came to make the inspection of the premises. At that time no changes had been made in any of the lines, wires, fixtures, switches or other electrical equipment, from the time that Mr. Petree was found."

D. E. Rouse, a licensed electrical engineer, and who qualified as an expert in that field, later inspected the premises. In response to a hypothetical question, he testified that in his opinion there was no electricity in any of the lines, wires or other equipment on the pole which Mr. Petree climbed and within his reach which could have produced an electrical shock to his body if he had come in contact with them.

The evidence was to the effect that the deceased had an abnormal condition of the heart, and that from 1956 on he knew he had a bad heart condition and could not carry on his normal activities.

In the face of the convincing evidence that all the power had been disconnected before Mr. Petree died and that all the switches were in the same position and condition when inspected by the committee, and with no evidence to the contrary, the cause of death could not be found to be due to any kind of electrical shock. In view

of his long history of a serious heart condition there is little reason to doubt that it caused his death.

We agree with Judge Crissman that there was no competent evidence to support the award of the Commission. His judgment is
Affirmed.