HATTIE WESTBROOKS, WIDOW OF DOUGLAS WESTBROOKS, DECEASED, EMPLOYEE-PLAINTIFF v. RONNIE BOWES D/B/A RONNIE'S APPLIANCES, EMPLOYER-DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER-DEFENDANT

No. COA97-887

(Filed 18 August 1998)

### 1. Workers' Compensation— cause of death—expert testimony

The Industrial Commission did not err in a workers' compensation action arising from the death of a worker installing an ice maker by admitting evidence from an electrician and a medical examiner from Georgia that wiring in the crawl space where the worker died constituted an electrical shock hazard and that the worker died from cardiac arrhythmia caused by electrocution. Although defendants relied on an examination of the cable on the evening of the death which found only minor nicks and scrapes in the insulation, plaintiff presented evidence demonstrating a reasonable possibility that the condition of the cable

remained unchanged and the discrepancy bears on the weight of the evidence rather than its admissibility. Likewise, the Commission properly admitted the opinion testimony of the medical examiner.

**2. Workers' Compensation— electrocution—fatal injury arising by accident in the course of employment**

The Industrial Commission in a workers' compensation action did not err by finding and concluding that decedent sustained a fatal injury by accident arising out of and in the course of his employment where decedent died in a crawl space while installing an ice maker, he had not complained of any physical ailments before he died, and his medical records revealed that he was in good health; the weather on the afternoon of his death was hot and humid and decedent had perspired profusely; he crawled through a damp and cramped crawl space to turn off a water valve that was less than two feet from a half-inch tear in the insulation of an energized electrical cable that was lying on the ground; the cable was not of the kind recommended for use in moist environments and did not have a ground fault circuit interrupter; after decedent turned the water off, he suddenly groaned and became unresponsive; he was in fine ventricular fibrillation when the EMS team arrived, which is typical of shock victims; the autopsy certified the immediate cause of death as cardiac arrhythmia; and an expert in the area of electrocution deaths formed an opinion that decedent received a fatal electrical shock.

**3. Workers' Compensation— notice of accident—failure to give timely written notice—reasonable excuse—no finding regarding prejudice**

A worker's compensation case was remanded where plaintiffs did not provide timely notice of the accident, defendants concede that they were cognizant of decedent's death immediately after it occurred, and the Industrial Commission decision did not address defendant's contention of prejudice in that they took no steps to investigate the scene until after it was allegedly compromised. N.C.G.S. § 97-22 requires timely notice of the occurrence of an accident unless reasonable excuse is made to the satisfaction of the Commission, but the action is barred despite a reasonable excuse if prejudice resulted to defendant. The Commission may conclude that N.C.G.S. § 97-22 is not a bar to plaintiff's claim only after it makes a finding regarding the issue of prejudice.

WESTBROOKS v. BOWES

[130 N.C. App. 517 (1998)]

Appeal by defendants from opinion and award entered 12 May 1997 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 March 1998.

*Timothy Rasmussen and Zeyland G. McKinney, Jr. for plaintiff-appellee.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, A Professional Limited Liability Company, by G. Thompson Miller, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Defendants Ronnie Bowes d/b/a Ronnie's Appliances (Ronnie's) and Liberty Mutual Insurance Company (Liberty Mutual) appeal from an opinion and award of the North Carolina Industrial Commission awarding death benefits to plaintiff Hattie Westbrooks, the widow of Douglas Westbrooks (Westbrooks), under sections 97-38 and 97-39 of the North Carolina General Statutes. Defendants contend that the greater weight of the medical evidence in the record did not support the Commission's findings and conclusions that Westbrooks died of electrocution arising out of and in the course of his employment. Further, defendants contend that plaintiff's claim for death benefits was barred for failure to comply with the notice requirement of section 97-22 of the General Statutes.

At the time of his death, Westbrooks was 35 years old and worked as an installation man for defendant Ronnie's. His responsibilities involved delivering, installing and servicing various home appliances. On the afternoon of 3 September 1992, Westbrooks and his co-worker, Steven Whitt, went to the home of Thomas and Renee Little to install an ice maker. The Littles resided in a double-wide manufactured home with a bricked-in crawl space underneath. To install the ice maker, Westbrooks had to go into the crawl space to turn off the water valve.

The weather on the afternoon of 3 September 1992 was hot and humid. As he went about his work, Westbrooks perspired profusely, and his clothing was wet when he entered the crawl space. From the entrance, Westbrooks crawled several feet through the damp, confined space until he reached the water valve, which was located in the center of the crawl space area. When he had turned off the water, he called out to Whitt through a nearby vent hole and began explaining how to install the ice maker. Then suddenly,

Westbrooks stopped talking mid-sentence, groaned twice, and became unresponsive.

Roy Brooks, Floyd Woody, and Bradley Rue of the Timberlake Fire and Rescue Squad responded to the call for emergency assistance at the Little home on the afternoon of 3 September 1992. Upon their arrival, the rescuers turned off the electricity and went into the crawl space to retrieve Westbrooks. They discovered him lying between a cinder-block, support pillar and the wall of the mobile home. The rescue team pulled Westbrooks from the crawl space, and James Fortner and Robert Clay of the Person County Medical Service began administering emergency medical treatment to Westbrooks, who was in fine ventricular fibrillation. Fortner and Clay attempted to resuscitate and defibrillate him, but were unsuccessful. They then transferred Westbrooks to Person County Hospital, where he was pronounced dead. Thereafter, his body was taken to Chapel Hill, North Carolina, where Dr. Deborah Radisch, Associate Chief Examiner for the State of North Carolina, performed an autopsy and determined that the immediate cause of death was cardiac arrhythmia.

On 11 August 1993, plaintiff filed a Form 18 Notice of Accident with the Commission claiming that Westbrooks died on 3 September 1992 from an injury arising out of his employment with defendant Ronnie's. Plaintiff subsequently filed a Form 33 Request for Hearing, and defendants filed a Form 33R denying compensability and asserting that plaintiff failed to give notice of the accident within thirty days as required by law. The case was heard by Deputy Commissioner Bernadine S. Ballance on 26 and 27 July 1994. The primary issue to be decided was whether Westbrooks died as a result of a pre-existing coronary artery disease or whether his death was proximately caused by electrocution while installing the ice maker at the Little residence.

The evidence presented at the hearing tended to show that on the evening of 3 September 1992, Mr. and Mrs. Little contacted Rick Davis, an electrician, and asked him to check the wiring under the crawl space to determine whether Westbrooks had been electrocuted. Davis testified that when he entered the crawl space, the electricity was turned off. Using a flashlight, he examined the Romex cable electrical wire to the water softener, which was lying on the ground near the water valve. Davis stated that he ran his hand down the length of the wire to feel for imperfections. He found minor nicks and dings in the insulation, but nothing through the outer sheathing.

Upon completing his inspection, Davis informed the Littles that the wire lying on the ground created a potentially dangerous situation and recommended that the Littles have it installed to code.

With the Littles' permission, plaintiff arranged to have Mark Walters, an electrician, survey the wiring under the Littles' home on 3 October 1992. The electricity was left on while Walters conducted his inspection. He entered the crawl space with a flashlight and examined the entire length of the Romex cable, inch by inch, turning it over as he went. Approximately eighteen inches from the water valve, Walters found a one-half-inch long tear in the outer sheathing of the cable. To see if the hot wire was damaged, he carefully cut away the outer sheathing to expose the conductors and discovered that the outer insulation on the hot wire had also been scraped away. In his opinion, this condition qualified as an electrical shock hazard.

At the request of defendant Liberty Mutual, Roger Smith, an electrical engineer with MET Laboratories, tested the Romex cable from the crawl space. In his test report, Smith noted that when he removed the wire from the crawl space, he observed various masonry bricks and rocks scattered about the area. It was his opinion that the abrasion to the cable was caused by one of these masonry materials. Smith testified that because the wire's insulation had been compromised, anyone who came in contact with the damaged area could be shocked.

Dr. Radisch testified regarding the autopsy performed on Westbrooks. She stated that her findings revealed a "severe degree of coronary artery disease for a man of [Westbrooks'] age"; therefore, she certified the cause of death as coronary artery disease. Dr. Radisch said she found Westbrooks' arteries to be partially occluded to an eighty-five percent degree in two different places, but she stated that she could have erred ten percent either way due to the fact that she only estimated the amount of blockage. She stated further that blockages of seventy-five percent or less are generally not clinically significant.

Dr. Radisch also testified that she considered electrocution as a possible cause of death, but she ruled it out because she was told that there was no evidence of an electrical danger present at the scene where the death occurred. Responding to a hypothetical question, however, Dr. Radisch stated that she would have certified the cause of death as electrocution had she known the following at the time of the autopsy: that an electrical shock hazard was present within two

feet of the water shut-off valve, that it "made sense for [Westbrooks] to be in contact with the [hazard]," that the crawl space was damp, and that Westbrooks' clothes were wet or damp from perspiration.

Dr. John Butts, the Chief Medical Examiner for the State of North Carolina, reviewed Dr. Radisch's autopsy and agreed with her conclusion that Westbrooks died as a result of his pre-existing coronary artery disease. Dr. Butts stated that he had a problem certifying Westbrooks' death as an electrocution, because he had no facts at his disposal to indicate that Westbrooks had come in contact with an electrical hazard. In his review note, Dr. Butts stated that "there would be no appreciable risk of electrocution unless the integrity of the insulation around the actual conductor itself had been broken and there is no indication of this in the report." Yet, after being told that there was evidence that the integrity of the conductor's insulation had been broken, Dr. Butts did not change his opinion. He conceded, however, that if it were true that there was an exposed energized source in Westbrooks' immediate proximity when he shut off the valve, there is certainly a "reasonable possibility" that he died as a result of electrocution.

Plaintiff retained Dr. James Lawson Burton, the Chief Medical Examiner for Atlanta, Georgia to examine the autopsy report and other evidence to formulate an opinion regarding the cause of Westbrooks' death. Dr. Burton has personally performed over ten thousand autopsies and he conducts anywhere from two to three dozen electrocution autopsies per year, one-fourth of which are low voltage cases with no skin burns. As part of his investigation into the cause of Westbrooks' death, Dr. Burton reviewed the following evidence: the emergency room and encounter records; the code blue records, including the agonal rhythm strips and blood gas reports; Westbrooks' medical records from 1968 to 1985; the death certificate; Dr. Radisch's autopsy report; the ambulance trip sheet and blood alcohol report; the Person County Sheriff's report; Walters' electrical report; the clothing worn by Westbrooks at the time of death; photographs of Westbrooks and his family prior to his death; photographs of the clothing Westbrooks was wearing at the time of death; photographs of the crawl space; a report by Dr. Carl Britt; Dr. Butts' deposition; Smith's electrical report; and the Romex cable from the crawl space.

Based on his investigation, Dr. Burton opined that Westbrooks died from cardiac arrhythmia caused by electrocution. He stated that to render this opinion, it was not necessary for Westbrooks to have

been found in contact with the electrical shock hazard. He further stated that because there was no ground fault circuit interrupter on the Romex wire, there was an even greater likelihood that Westbrooks was electrocuted. Dr. Burton also noted, with regard to the coronary artery lesions observed by Dr. Radisch during the autopsy, that people with the same type of lesions live full and normal lives. Thus, he was not of the opinion that Westbrooks died as a result of his pre-existing coronary artery disease.

On 20 February 1996, the deputy commissioner entered an opinion and award finding and concluding that Westbrooks died from cardiac arrhythmia caused by electrocution, an injury by accident arising out of and in the course of his employment with defendant Ronnie's. The deputy commissioner then awarded death benefits to Westbrooks' widow and minor child, pursuant to North Carolina General Statutes sections 97-38 and 97-39. Defendants appealed to the Full Commission, and the Full Commission affirmed the deputy commissioner. Again, defendants appeal.

On appeal, defendants raise thirty-three assignments of error pertaining to the Commission's opinion and award. As to twenty-three of these assignments, however, defendants fail either to argue them in the brief or to cite any authority to support them, in violation of the North Carolina Rules of Appellate Procedure. Rule 28(b)(5) of our Rules of Appellate Procedure appropriately provides as follows:

> Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned. The body of the argument shall contain citations of the authorities upon which the appellant relies.

N.C.R. App. 28(b)(5). Accordingly, twenty-three of defendants' assignments of error are deemed abandoned, and we proceed to analyze only those assignments that comport with our Appellate Rules.

[1] By Assignment of Error 11, defendants argue that the Commission erred in admitting Walters' opinion that the wiring under the Littles' crawl space constituted an electrical shock hazard. Defendants contend that this testimony was inadmissible, because there was insufficient evidence to show that the Romex cable was in the same condition at the time of Walters' inspection as it was at the time of Westbrooks' death. Similarly, by Assignment of Error 22, defendants argue that the Commission erred in admitting Dr. Burton's

opinion concerning the cause of Westbrooks' death, because this opinion was derived, in part, from Walters' findings. We disagree.

Under the North Carolina Rules of Evidence, relevant evidence is generally admissible, but evidence that is irrelevant or incompetent must be excluded. N.C.R. Evid. 402. Rule 401 states that "[r]elevant evidence" is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. "The test for determining whether evidence of a condition existing at one time is admissible as evidence of a condition existing at another time 'depends altogether on the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime.'" *Tennessee-Carolina Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 241, 210 S.E.2d 181, 185 (1974) (quoting 1 Stansbury's North Carolina Evidence § 90 (Brandis Rev. 1973)), *quoted in Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 531, 361 S.E.2d 909, 921 (1987). In short, the appropriate inquiry in each case "is the degree of likelihood that the condition has remained unchanged." *Strick*, 286 N.C. at 242, 210 S.E.2d at 185. Upon applying this standard, it is largely within the Commission's discretion to determine the admissibility of evidence concerning a condition. *Robinson*, 87 N.C. App. at 531, 361 S.E.2d at 921.

Evidence regarding the condition of the Romex cable was relevant to the question of whether Westbrooks died of electrocution. Defendants, however, submit that the electrical shock hazard discovered by Walters on 3 October 1992 did not exist at the time of Westbrooks' death. As support for this argument, defendants rely heavily on the fact that Davis, who examined the cable on the evening of Westbrooks' death, found only minor nicks and scrapes in the wire's insulation. This discrepancy bears on the weight of the evidence, rather than its admissibility, and since plaintiff presented evidence demonstrating a reasonable possibility that the condition of the cable remained unchanged, we conclude that Walters' opinion was competent and admissible.

Mrs. Little testified that to her knowledge, no one had been in the crawl space at any time between the Davis and Walters inspections. Furthermore, the entrance to the crawl space was enclosed in a pen housing a 150-pound Mastiff dog; therefore, it is unlikely that someone could have entered the crawl space without Mrs. Little's knowl-

edge or permission. In addition, although defendants imply that Troy Wilson, a relative of plaintiff, intentionally damaged the cable, Wilson firmly denied ever having been in the crawl space. Thus, the Commission neither erred nor abused its discretion in allowing Walters to testify that the cable was damaged and constituted an electrical shock hazard. Likewise, we hold that the Commission properly admitted the opinion testimony of Dr. Burton, and defendants' assignments of error are overruled.

[2] By Assignments of Error 24, 25, 27, 29, 32 and 33, defendants argue that the Commission erred in finding and concluding that Westbrooks sustained a fatal injury by accident arising out of and in the course of his employment. It is defendants' position that the Commission's findings and conclusions with regard to compensability lack evidentiary support. We cannot agree.

Upon review of an opinion and award entered by the Industrial Commission, this Court is limited to two questions: (1) whether there is any competent evidence in the record before the Commission to support its findings of fact, and (2) whether those findings of fact, likewise, support the Commission's conclusions of law. *Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996) (citations omitted). Moreover, it is well-settled that the Commission, as the fact finder, is the sole judge of the credibility of the witnesses before it and the weight to be accorded their testimony. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citing *Watson v. Winston-Salem Transit Auth.*, 92 N.C. App. 473, 475, 374 S.E.2d 483, 485 (1988)). Thus, this Court is bound by the Commission's findings of fact, if they are supported by any competent evidence of record. *Lowe*, 121 N.C. App. at 573, 468 S.E.2d at 397. This is true, even if the record contains evidence that would support contrary findings. *Id.*

To recover death benefits under the Workers' Compensation Act, a claimant bears the burden of proving that the decedent sustained a fatal injury (1) by accident, (2) arising out of his employment, and (3) during the course of his employment. N.C. Gen. Stat. §§ 97-2(6), 97-38 (Cum. Supp. 1997). The accident and its effect, however, need not "be established by eye witnesses or to a mathematical or scientific certainty." *Snow v. Dick & Kirkman*, 74 N.C. App. 263, 267, 328 S.E.2d 29, 32 (1985).

Inferences from circumstances when reasonably drawn are permissible and that other reasonable inferences could have been

drawn is no indication of error; deciding which permissible inference to draw from evidentiary circumstances is as much within the fact finder's province as is deciding which of two contradictory witnesses to believe.

*Id.* (citing *Blalock v. City of Durham*, 244 N.C. 208, 92 S.E.2d 758 (1956)). In our opinion, the inferences drawn by the Commission regarding the cause of Westbrooks' death are factually reasonable and legally permissible. *See id.*

In the case *sub judice*, the evidence before the Commission tended to show that before he died, Westbrooks did not complain of any physical ailments, and his medical records revealed that he was in very good health. On the afternoon of his death, Westbrooks had perspired profusely, and his clothing was wet. To install the Littles' ice maker, Westbrooks crawled through a damp and cramped crawl space to turn off a water valve that was less than two feet away from a half-inch tear in the insulation of an energized electrical cable that was lying on the ground. The cable was not the kind recommended for use in moist environments, and it did not have a ground fault circuit interrupter. After Westbrooks had turned the water off, he suddenly groaned and became unresponsive. When the EMS team arrived, he was in fine ventricular fibrillation, which is typical of shock victims.

The autopsy of Westbrooks certified the immediate cause of death as cardiac arrhythmia, and Dr. Burton, an expert in the area of electrocution deaths, reviewed the evidence in this case and formed an opinion that Westbrooks received a fatal electrical shock. In sum, there was ample competent evidence in the record to support the Commission's finding that Westbrooks died as a result of an injury by accident arising out of and in the course of his employment with defendant Ronnie's. This finding supports the corresponding conclusion; therefore, we hold that the Commission did not err.

Defendants rely on this Court's decision in *Gilbert v. B & S Contractors, Inc.*, 81 N.C. App. 110, 343 S.E.2d 609 (1986), and our Supreme Court's decision in *Petree v. Power Company*, 268 N.C. 419, 150 S.E.2d 749 (1966), as support for their argument that plaintiff has failed to produce sufficient evidence to show that Westbrooks was electrocuted. Defendants' reliance on these cases, however, is misplaced.

In *Gilbert*, a 34-year old cablevision lineman waited by a utility pole while his co-workers ran cable along the side of the road. When

the co-workers returned to where Gilbert was waiting, they found him dead, lying on the ground at the base of the pole. The pathologist who performed the autopsy attributed the cause of Gilbert's death to "very severe significant coronary artery disease," but noted that the possibility of low voltage injury could not be excluded, despite the lack of any physical evidence suggesting electrocution. The Commission denied the claim for death benefits brought by Gilbert's mother, and this Court affirmed, since there was no evidence that Gilbert climbed the utility pole or came anywhere near a charged electrical conduit. The facts of the instant are distinguishable, because there was evidence in the record from which the Commission could infer that Westbrooks came in contact with an electrical shock hazard. Hence, *Gilbert* is not controlling with regard to this case.

*Petree* is likewise distinguishable. In *Petree*, a Duke Power serviceman died after climbing a utility pole that had a transformer and several wires running to its cross-arm. Petree's co-worker heard groans, and when he looked up, he saw that Petree was dead, hanging on the pole by his safety belt. The coroner who conducted the autopsy of Petree's body noted no burns or other evidence of electrical shock and certified the cause of death as coronary occlusion. The Commission concluded that Petree was electrocuted and awarded death benefits to his widow. The Superior Court reversed the Commission, and the Supreme Court affirmed on the ground that there was no competent evidence to support the award. Duke Power had presented uncontroverted evidence that the electricity had been disconnected and that there was no current running to the transformer or any of the wires leading up to the cross-arm near Petree's body. Furthermore, the evidence tended to show that Petree had an abnormal heart condition and that he had been aware of this condition for six years. In the present case, the Romex cable under the crawl space was energized, and Westbrooks' medical records revealed no prior history or diagnosis of coronary artery disease. Thus, we find *Petree* inapposite to the present case and reject defendants' assignments of error.

[3] Finally, by Assignments of Error 26 and 28, defendants contend that the Commission erred in concluding that North Carolina General Statutes section 97-22 does not bar plaintiff's claim. We agree, due to the Commission's failure to address in its findings whether defendants were prejudiced by plaintiff's failure to give timely written notice.

Section 97-22 of the North Carolina General Statutes requires that "[e]very injured employee or his representative . . . immediately on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident." N.C. Gen. Stat. § 97-22 (1991). Section 97-22 further provides that:

> no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby.

*Id.* This Court has held that a "reasonable excuse" for failing to give timely notice includes "a belief that [the] employer is already cognizant of the accident." *Lawton v. County of Durham,* 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987).

In this case, the Commission found, and defendants concede, that defendants were cognizant of Westbrooks' death immediately after it occurred. Defendants argue, however, that they were prejudiced by plaintiff's delay in providing written notice, because they took no steps to investigate the scene of the accident until after it was allegedly compromised. Since the Commission's decision does not address this contention, we remand this matter for further findings.

It is true that the Commission is not obliged to make specific findings of fact as to every issue raised by the evidence. *Id.* at 592, 355 S.E.2d at 160. Still, the Commission "is required to make findings on crucial facts upon which the right to compensation depends." *Id.* Furthermore, "where the findings are insufficient to enable the court to determine the rights of the parties, the case must be remanded to the Commission for proper findings of fact." *Id.* (citing *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E.2d 101 (1981)).

A claimant's action is barred, despite a reasonable excuse for failing to comply with section 97-22, if prejudice resulted to the defendant. *Jones v. Lowe's Companies Inc.,* 103 N.C. App. 73, 76, 404 S.E.2d 165, 167 (1991). The burden is on the defendant to show that it was prejudiced, and in determining whether prejudice occurred, the Commission must consider the evidence in light of the purpose behind the section 97-22 notice requirement. *Id.* "The purpose is

IN RE APPEAL OF PHILLIP MORRIS

[130 N.C. App. 529 (1998)]

dual: First, to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury." *Id.* at 76-77, 404 S.E.2d at 167. Only after the Commission makes a finding regarding the issue of prejudice, may it conclude that section 97-22 is not a bar to plaintiff's claim. Thus, we must remand this action for appropriate findings of fact.

Based upon the foregoing analysis, we remand this case to the Industrial Commission for specific findings as to whether defendants were prejudiced by plaintiff's failure to tender written notice of the fatal injury within 30 days.

Remanded.

Judges GREENE and WALKER concur.