***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times.
3. At all relevant times, defendant-employer regularly employed three or more employees.
4. Defendant-employer is self-insured for workers' compensation.
5. Plaintiff earned an average weekly wage which entitles him to the maximum compensation rate for the year 2000, $588.00.
6. Plaintiff was out of work for six weeks.
7. Plaintiff's medical records aside from deductibles and co-payments have been paid by plaintiff's health insurance.
8. The responses of Dr. John Welshofer are admitted into evidence.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 54 year old male, born March 25, 1947. Plaintiff had been a long line truck driver for approximately 21 years prior to becoming employed by defendant-employer. On January 13, 2000, plaintiff had been employed by defendant-employer approximately two and one half years as a long line driver. Plaintiff had no history of back problems.
2. On January 13, 2000, plaintiff was on a long distance run from Kernersville to Charleston. When he arrived at his destination in Charleston he was instructed to break the trailers apart. As he dropped the converter gear his feet slipped out from under him and he fell. Plaintiff caught himself on the converter with his hand before he struck the ground. Plaintiff immediately felt something pull and get hot in his lower middle back. Plaintiff finished his duties and started back to Kernersville.
3. On plaintiff's trip back he could tell that something was not right with his back and on the trip back pulled over and took a hour nap because his back was hurting.
4. For the next 30 days plaintiff continued to work five or six days a week and to return home for one or two days performing his regular duties. Plaintiff continued to have pain in his back but thought that he would get over it.
5. On February 13, 2000, a Sunday morning, plaintiff attempted to get up but his back was hurting to the point that he was unable to do so. On February 14, 2000, plaintiff called in to work getting on the sick list. At that time, plaintiff did not report his injury.
6. On Monday, February 14, 2000, plaintiff presented to his family doctor, Dr. Steven Jones, complaining of back pain and left hip pain with radiation to his thigh and left side. Plaintiff reported that he had these symptoms for the last month. Dr. Jones ordered x-rays, prescribed pain medication and wrote plaintiff out work. Plaintiff returned to Dr. Jones on February 17, 2000 with his pain continuing to worsen. Plaintiff was diagnosed with lumbar back pain and radiculopathy. He was prescribed a Medrol DosePak and physical therapy and a MRI of the L-S spine was taken.
7. Plaintiff continued to have pain and following three weeks of physical therapy without relief was referred by Dr. Jones to Dr. John Welshofer, a board-certified physical medical and rehabilitation specialist with a practice dealing only in individuals with back injuries.
8. On April 3, 2000, plaintiff presented to Dr. Welshofer complaining of back pain. Lumbar spine x-rays revealed some mild degenerative disc disease at L5-S1. The MRI of plaintiff's lumbar spine revealed a HIZ lesion with a sub-annular disc herniation at L4-5.
9. It was Dr. Welshofer's opinion that plaintiff had a disc injury to his low back where he had a small sub-annular disc herniation at the L4-5 level and a disc protrusion at L5-S1 as well as clear evidence of a torn disc at L4-5 with a hyper intense zone lesion at L4-5. All of these conditions can cause significant back pain and reactive sciatica consistent with plaintiff's complaints.
10. Dr. Welshofer is of the opinion that plaintiff's diagnosis and condition was caused by his January 13, 2000 incident.
11. On May 11, 2000, plaintiff returned to Dr. Welshofer and was feeling better. He was scheduled for a return visit in six weeks but did not show up for his June 22, 2000 appointment and has not called concerning further back problems.
12. Plaintiff has not been given a rating, and Dr. Welshofer is unable to offer an opinion whether or not plaintiff has a permanent impairment because plaintiff has not returned to see him since May 11, 2000.
13. On March 7, 2000, plaintiff notified Adrian Finch, his manager, of his injury which occurred on January 13, 2000. This is the first notification which plaintiff gave to defendant-employer that his back problems and absences were caused by a work-related incident.
14. When defendant-employer received notice on March 7, 2000, that plaintiff was claiming this was a work-related incident, it did not seek to investigate the incident or to provide any treatment to plaintiff.
15. On January 13, 2000, plaintiff sustained a compensable injury by accident.
16. As a direct and proximate result of plaintiff's January 13, 2000 compensable injury, plaintiff was unable to engage in activities required by his former job for a period of six weeks during February and March 2000.
17. The treatment which plaintiff received for his back condition was reasonably designed to effect a cure, give relief and lessen the period of disability.
18. As of the date of the close of the record before the Deputy Commissioner, Plaintiff had not been assigned a permanent partial impairment; therefore, it has not been determined what, if any, permanent impairment plaintiff retains.
19. Until early March 2000, plaintiff was not aware and did not realize the serious nature of his injury as he continued to work until early February and thereafter underwent physical therapy which he had a reasonable expectation would help his condition.
20. Defendant-employer was not prejudiced by plaintiff's failure to give written notice within 30 days of the occurrence of his injury as even after plaintiff notified defendant-employer it did not attempt to have plaintiff diagnosed or treated medically and plaintiff had been receiving appropriate and adequate medical care in the interim and as upon notice, defendant-employer did not seek to investigate the circumstances surrounding plaintiff's injury.
 ***********
The foregoing stipulations and findings of fact engender the following additional
 CONCLUSIONS OF LAW
1. On January 13, 2000, plaintiff sustained a compensable injury by accident.
2. As a direct and proximate result of plaintiff's compensable injury on January 13, 2000, plaintiff sustained a disc injury to his lower back.
3. As a direct and proximate result of his compensable injury of January 13, 2000, plaintiff was unable to engage in activities required by his former job for a six-week period in March and April 2000.
4. Plaintiff has reached maximum medical improvement.
5. Plaintiff has not yet been evaluated for any permanent partial disability to his back.
6. Plaintiff's compensation rate is $588.00 per week.
7. N.C.G.S. § 97-22 provides that no compensation shall be payable unless written notice is given within 30 days after the occurrence of the accident, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice, and the Commission is satisfied that the employer has not been prejudiced thereby. The purpose of the notice of injury requirement is twofold. It allows the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury, and it facilitates the earliest possible investigation of the circumstances surrounding the injury.Booker v. Duke Medical Center, 297 N.C. 458 (1979). The burden is on the defendant to show that it was prejudiced, and in determining whether prejudice occurred the Commission must consider the evidence in the light of the dual purpose behind this section. Westbrooks v. Bowes,130 N.C. App. 517 (1998). Further, pursuant to Section 97-22, the employee is not entitled to receive benefits until he gives notice of his injury to his employer. See Eller v. Lawrence Leather Co., 222 N.C. 604,24 S.E.2d 244 (1943); Cross v. Fieldcrest Mills, Inc., 19 N.C. App. 29,198 S.E.2d 110 (1973). Thus, although plaintiff was out of work since February 14, 2000, he is not entitled to recover benefits until he gave notice of his injury on March 7, 2000.
8. In the instant case, plaintiff notified defendant-employer of the work-relatedness of his back condition as soon as he realized the nature and seriousness of his injury. Defendant-employer has not shown any evidence that it was prejudiced by plaintiff's failure to notify of his injury in writing within 30 days as it did not attempt to investigate the events surrounding plaintiff's accident, plaintiff was not with anyone when it occurred, plaintiff received medical care which was adequate and appropriate and defendant-employer did not seek to provide plaintiff medical treatment or diagnosis upon being notified of plaintiff's work-related injury. Defendant's argument that it was unable to place plaintiff in the alternative work program is not one of the stated purposes of the notice of injury requirement which should be considered in determining whether or not defendant-employer was prejudiced. Westbrooksv. Bowes, 130 N.C. App. 517 (1998).
9. A finding by the Commission that the employer has not been prejudiced by the failure of the plaintiff to give notice of the injury within 30 days after the accident suffices to sustain the award from and after such notice, but not for benefits which may have accrued prior thereto. Eller v. Lawrence Leather Co., 222 N.C. 604 (1943).
10. Plaintiff is entitled to temporary total disability benefits from March 7, 2000 until his return to work at the end of March 2000.
11. Plaintiff is entitled to medical treatment provided by defendant from March 7, 2000 and continuing as long as it effects a cure, gives relief and/or lessens the period of disability from his disc injury.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 AWARD
1. For his compensable disc injury, defendant shall pay temporary total disability compensation to plaintiff in the amount of $588.00 per week for the period from March 7, 2000 until he returned to work at the end of March 2000. This amount has accrued and shall be paid in a lump sum.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his disc injury from March 7, 2000 and continuing as long as such treatment is reasonably designed to effect a cure, provide relief or lessen the period of disability.
3. Defendant shall pay, if not already paid, the costs, including an expert witness fee, which is hereby approved, in the amount of $300.00 for Dr. Welshofer.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER