***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties were subject to the North Carolina Workers' Compensation Act at the time of the incident; the employer employing the requisite number of employees to be bound under the provisions of the Act.
2. The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter of this action.
3. An employee-employer relationship existed at the time of the alleged incident.
4. Robertson Airtech International (RAI) is the employer.
5. Plaintiff alleges that his injury occurred on December 5, 2000.
6. Plaintiff's compensation rate is subject to verification by a Form 22.
7. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiffs medical records.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 46 years old at the time of the hearing before the Deputy Commissioner, his date of birth being October 19, 1956. Plaintiff attended school through the ninth grade and does not have a GED.
2. Approximately ten years prior to December 5, 2000, the date of the injury of issue in this matter, plaintiff had lower back problems and underwent a lower back fusion surgery. Plaintiff was not diagnosed with degenerative conditions thereafter. This condition was in no way related to plaintiff's cervical spine, neck, or arms.
3. Plaintiff was employed by defendant-employer as a sheet metal helper at the time of the injury that gave rise to this claim. Plaintiff performed ductwork, which included the building and installing of ducts for heating and air filtration. On December 5, 2000, plaintiff was using a scissor lift to install ducts at a job site. While installing a line of ductwork, plaintiff had to crawl under the lift to access the particular duct line on which he was working. In order to position a section of duct in its proper place, plaintiff used his head and shoulders to push the duct upward. In doing so, plaintiff hit his head and immediately felt the onset of sharp pain in the back of his neck. Plaintiff finished installing the duct, came down from the lift. He immediately told his wife, who worked with him, about what had happened. Feeling sick, plaintiff left his wife and went to the restroom.
4. After leaving the restroom, plaintiff came upon John Fisher, the project superintendent. He informed Mr. Fisher that he had just hurt his neck and thought he was sick.
5. Plaintiff had been out of work the previous day because he and his wife had influenza. Mr. Fisher testified that if plaintiff had stated that his neck was hurting on December 5, 2000, he would probably have assumed that plaintiff was experiencing continued throat pain from the December 4, 2000, influenza incident.
6. Although plaintiff attempted to report his injury to his supervisor immediately after it happened, there appears to have been a miscommunication between plaintiff and Mr. Fisher. The Full Commission finds that plaintiff acted appropriately and neither plaintiff nor Mr. Fisher is at fault for plaintiffs failed attempt to report the injury that he sustained while installing the ductwork.
7. Plaintiff was able to finish working the rest of his shift on December 5, 2000, despite his pain. Although plaintiff continued to experience pain in the following days, he did not immediately seek treatment. Plaintiff's father was dying in the hospital at that time and plaintiff stayed by his father's bedside almost constantly for approximately three weeks. Plaintiff's father died January 5, 2001.
8. Plaintiff presented to Dr. James P. Wallace, an internist, on January 12, 2001, complaining of pain in his neck, headaches, and other problems, including a tremor in his right hand.
9. An MRI revealed a small disc at C6-C7. The disc was not ruptured but was centrally protruding.
10. Thereafter, Dr. Wallace referred plaintiff to Dr. W. S. Edwards, Jr., an orthopedic surgeon. On January 22, 2001, plaintiff presented to Dr. Edwards complaining of neck pain and headache. A CT myelogram showed mild degenerative changes at C5-6 and C6-7 but no significant compressive pathology.
11. Dr. Edwards was unable to explain plaintiff's symptoms and referred him to Dr. R. Joseph Healy, a neurologist.
12. Plaintiff presented to Dr. Healy on January 30, 2001. Dr. Healy observed a tremor in plaintiff's right arm but noted that it was distractible. Dr. Healy was of the opinion that plaintiff's headaches were multi-factorial in that poor sleep and stress from the recent death of his father were also contributing to his condition. Nerve conduction studies performed on plaintiff suggested ulnar neuropathy and very mild carpal tunnel syndrome but no definite evidence of cervical radiculopathy.
13. On February 4, 2001, plaintiff phoned John Fisher, plaintiff's supervisor, to consult as to the exact date when plaintiff had reported his injury. This conversation was the first time Mr. Fisher understood that plaintiff was reporting a work related injury. Mr. Fisher promptly reported plaintiffs injury to Ron Tanner, the vice president for administration and safety with RAI. Mr. Tanner immediately filled out the appropriate form and sent it to the carrier on that date.
14. The Deputy Commissioner found that plaintiffs testimony as to his injury is credible based upon his demeanor, the evidence of record, as well as the testimony and demeanor of the other witnesses. The Full Commission has no cause to find otherwise.
15. Dr. Healy was of the opinion that plaintiff has underlying, long-standing cervical degenerative changes, which were aggravated by plaintiffs work-related incident on December 5, 2000. Dr. Healy, on February 1, 2001, was of the opinion that plaintiff's headaches were secondary to his cervical spine problems as well as his bad sleep, and that plaintiff has right upper cervical radiculopathy. Dr. Healy was of the opinion that plaintiffs work injury "stirred up" his cervical spine problems.
16. On July 2, 2001, following nerve conduction studies, Dr. Healy opined that plaintiff had ulnar neuropathy of the right ulnar groove, and possibly mild right carpal tunnel syndrome, but no definite evidence of cervical radiculopathy.
17. On July 6, 2001, the last day that Dr. Healy treated plaintiff, Dr. Healy opined that plaintiff had chronic cervical strain with no definite evidence of radiculopathy. Dr. Healy was also of the opinion that plaintiff's headaches were related to his cervical spine problems and noted there was some clinical evidence of right upper cervical radiculopathy. Dr. Healy recommended that plaintiff have an epidural.
18. At the time of the hearing before the Deputy Commissioner, plaintiff reported that he was attending pain management with Dr. Perry for his cervical condition.
19. Plaintiff received a total of $5,282.42 in short-term disability payments that were completely funded by RAI.
20. Although plaintiff produced a note from Dr. Wallace authorizing him to remain out of work indefinitely, the testimony of Dr. Wallace does not comport with the note. Dr. Wallace testified that it would be highly unlikely for him to take plaintiff out of work indefinitely. At his deposition, Dr. Wallace indicated that he did not recognize the note and that his signature was merely stamped on it. The Full Commission makes no finding in regard to the credibility of the note, but gives greater weight to the testimony of Dr. Wallace in finding that plaintiff has not been written out of work indefinitely.
21. The Full Commission finds that plaintiff sustained a compensable injury by accident to his cervical spine on December 5, 2000.
22. Plaintiffs cervical strain and related symptoms were proximately caused by the December 5, 2000, incident in which plaintiff lifted a duct with his head and shoulders and felt immediate pain.
23. Plaintiff did not fail to report his injury to RAI and, indeed, did so on December 5, 2000. Furthermore, even if plaintiff had not reported the injury until February 4, 2001, as alleged by defendants, defendants have not shown any prejudice thereby caused to them.
24. Plaintiff is entitled to medical expenses incurred and to be incurred as a result of his compensable injury by accident for so long as such treatment tends to provide relief, effect a cure, or lessen the period of plaintiff's disability, including pain management.
25. Defendants were to submit a Form 22, Wage Chart, following the hearing before the Deputy Commissioner. No such wage chart was filed and there is no evidence of plaintiff s average weekly wage. Thus, the Commission is unable to determine an average weekly wage for plaintiff.
26. Plaintiff has failed to prove by the greater weight that he is incapable of earning wages in any employment. Plaintiff has not returned to work or sought other employment since he went out of work in mid-January 2001. Furthermore, the greater weight of the evidence fails to establish that plaintiff was taken out of work during that time.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 5, 2000, plaintiff sustained a compensable injury by accident to his cervical spine. Plaintiff's cervical strain and related symptoms were proximately caused by the December 5, 2000 incident in which plaintiff lifted the duct with his head and shoulders and felt immediate pain. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not fail to report his injury to defendant-employer and, indeed, did so on December 5, 2000. N.C. Gen. Stat. § 97-22. Furthermore, even if plaintiff had not reported the injury until February 4, 2001 as alleged by defendants, defendants have not shown any prejudice thereby caused to them. Westbrooks v. Bowes, 130 N.C. App. 517,503 S.E.2d 409 (1998) (burden on defendant to show prejudice).
3. Plaintiff is entitled to medical expenses incurred and to be incurred as a result of his compensable injury by accident as long as such treatment tends to provide relief, effect a cure or lessen the period of plaintiffs disability, including pain management. N.C. Gen. Stat. § 97-25.
4. Defendants were to submit a Form 22, Wage Chart, following the hearing before the Deputy Commissioner. The record shows that no such wage chart was filed with the Commission. Furthermore, there is no other evidence in the record of plaintiff s average weekly wage. Thus, the Commission is unable to determine an average weekly wage for plaintiff.
5. Plaintiff has failed to prove by the greater weight of the evidence that he is incapable of earning wages in any employment. Plaintiff has not returned to work or sought other employment since he went out of work in mid-January 2001. Furthermore, the greater weight of the evidence fails to establish that plaintiff was taken out of work during that time. N.C. Gen. Stat. § 97-2(9); Heffner v. Cone Mills Corp.,83 N.C. App. 44, 349 S.E.2d 70 (1986).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide all past and future medical treatment related to plaintiff's compensable injury. Furthermore, defendants shall reimburse plaintiff for all out-of-pocket expenses and shall reimburse all healthcare providers and health insurance companies that have rendered or paid for services rendered to plaintiff due to his compensable injury.
2. Defendants shall pay the costs, including an expert witness fee for Dr. James Wallace, which is hereby approved in the amount of $240.00
This 21st day of April 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER