* * * * * * * * * *
The Full Commission has reviewed the Opinion and Award of Deputy Commissioner Baddour, based upon the record of the proceedings before the Deputy Commissioner, the briefs of the parties, and the guidance of the North Carolina Court of Appeals. The appealing parties have shown good ground to reconsider the evidence; and having reviewed the competent *Page 2 
evidence of record, the Full Commission MODIFIES AND AFFIRMS the Opinion and Award of Deputy Commissioner Baddour.
 * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Wausau Insurance Companies is the carrier on the risk.
3. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
4. The issues for determination include:
 a. Did plaintiff sustain a compensable injury by accident arising out of and in the course of her employment on or around September 21, 2001?
 b. Did employee fail to notify defendants of her alleged workplace accident in violation of N.C. Gen. Stat. § 97-22 and, if so, were defendants prejudiced by said failure?
 c. To what benefits, if any, is plaintiff entitled? d. Is plaintiff entitled to reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1?
5. By correspondence dated June 20, 2003, from plaintiff's counsel, the parties have submitted a stipulation to an average weekly wage of $183.82.
 * * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-nine years old. Plaintiff graduated from high school and has taken some college courses.
2. In late January 2001, plaintiff was employed as a cashier in defendant-employer's clothing store. Plaintiff was promoted to supervisor in or around late June 2001. As a supervisor, plaintiff's job duties included supervising other employees, taking care of sales, doing computer work, stockroom and freight, and assisting other managers and supervisors in their work.
3. On Friday, September 21, 2001, while plaintiff was working the evening shift, plaintiff was instructed by the store manager, Jamaica Wells, to unload boxes of clothing from a delivery truck. Although normally two people would unload a truck, Ms. Wells left the store and instructed plaintiff to unload the truck alone. While plaintiff was unloading the boxes, plaintiff felt the onset of pain in her back.
4. Plaintiff did not immediately report the incident because Ms. Wells was not in the store at the time. Plaintiff did not seek immediate medical attention because she did not believe it was necessary. Plaintiff reported the incident to Ms. Wells when she saw her on the following Monday, September 24, 2001. Ms. Wells did not file an accident report at that time, but instead told plaintiff that plaintiff had ten days to file a report.
5. Plaintiff did not initially believe her injury was sufficiently serious to warrant filling out an accident report. However, over the following week, plaintiff's back continued to cause her pain while she was working. On the following Monday, October 1, 2001, plaintiff was *Page 4 
moving a rack of clothing weighing approximately 100 pounds when she felt a significant onset of pain in her back and down into her legs. Plaintiff continued to experience back pain and, within a few more days, had made arrangements to see a chiropractor.
6. On October 5, 2001, plaintiff sought chiropractic treatment with Dr. Anthony del Genovese at Nelson Nelson Chiropractic. Dr. del Genovese took plaintiff out of work at that time, and treated plaintiff through October 24, 2001. Dr. del Genovese diagnosed plaintiff with lumbar strain, some facet syndrome, and some mild spasm. Dr. del Genovese testified, and the Full Commission finds as fact, that the back conditions for which Dr. del Genovese treated plaintiff were causally related to the September 21, 2001, box unloading incident.
7. Beginning October 26, 2001, plaintiff received additional chiropractic treatment from Dr. Robert W. Twadell at Chiropractic Advantage. Dr. Twadell diagnosed plaintiff with disc injury, some muscle spasm and irritation, and reduced mobility. Dr. Twadell testified, and the Full Commission finds as fact, that the back conditions for which Dr. Twadell treated plaintiff were causally related to the September 21, 2001, box unloading incident.
8. On November 13, 2001, plaintiff began treating with Dr. Charles W. Pinnell III at Primary Care Plus. Plaintiff also saw Dr. Pinnell on November 27, 2001, and December 3, 2001. Dr. Pinnell diagnosed plaintiff with a lower back strain and continued to keep her out of work due to her back condition and an unrelated medical problem concerning an ovarian cyst. Dr. Pinnell testified, and the Full Commission finds as fact, that the back condition for which Dr. Pinnell treated plaintiff was causally related to the September 21, 2001, box unloading incident.
9. Dr. Pinnell testified, and the Full Commission finds as fact, that while his November 27, 2001, medical note does not address return to work, he would have released plaintiff to return to work light duty at that time with restrictions of no lifting over five pounds. *Page 5 
10. At some point in November 2001, plaintiff returned to work with defendant-employer in the position of operating the cash register.
11. In late December 2001, the employees of employer-defendant were informed that the store where plaintiff worked would be closing after the holiday season.
12. Plaintiff testified that she was unable to continue working due to ongoing back pain, and on January 8, 2002, plaintiff voluntarily left her employment. Plaintiff has not worked since January 8, 2002, and has not pursued any other employment.
13. On February 4, 2002, defendants received written notice of plaintiff's injury. There is no evidence in the record that defendants received written notice of plaintiff's injury at any time before that date.
14. On or about February 12, 2002, plaintiff filed a Form 18 with the Industrial Commission describing a workplace injury to plaintiff's back and legs occurring on or about September 21, 2001.
15. On February 23, 2002, the defendant-employer's store closed.
16. Gail Poss, an employee of defendant-carrier, testified that although defendant-carrier received written notification of plaintiff's alleged workplace injury on February 4, 2002, defendant-carrier did not receive plaintiff's Form 18 or a letter of representation from plaintiff's attorney until April 23, 2002, at which point defendant-carrier began to investigate plaintiff's claim. Ms. Poss testified, and the Full Commission finds, that the policy of defendant-carrier was to begin investigating a claim only upon receipt of an attorney letter of representation or a filed Form 18, regardless of the possible earlier receipt of written notice of a workplace accident. By the time it began investigating plaintiff's claim on April 23, 2002, defendant-carrier was unable to fully investigate the claim because of the closure of defendant-employer's store.
17. On May 6, 2002, defendants filed a Form 61 with the Industrial Commission denying plaintiff's claim. *Page 6 
18. On August 15, 2002, plaintiff saw Dr. John J. Mingle, a doctor in the Department of Neurology at UNC Hospitals in Chapel Hill, N.C. Dr. Mingle diagnosed plaintiff with myofascial pain syndrome of unknown etiology. He prescribed Celebrex, an anti-inflammatory drug, and Flexeril, a muscle relaxant drug, and referred plaintiff for an MRI.
19. An MRI was conducted on September 13, 2002. The results of the MRI were within normal limits and ruled out any significant pathology or structural lesions.
20. Plaintiff did not return to Dr. Mingle again until May 30, 2003. In his medical note, Dr. Mingle reports that plaintiff was "looking for a note or letter to state she is unable to work." Dr. Mingle noted that plaintiff "does not believe in pain medications and has not taken anything for her discomfort" and that he has "once again suggested taking Celebrex along with a muscle relaxant." Dr. Mingle also referred plaintiff to physical therapy, occupational therapy, and aqua therapy for range of motion and strength exercises. Although plaintiff was not employed, Dr. Mingle wrote her a note "to take off of work for approximately 2 to 4 weeks until she obtains physical therapy and occupational therapy." Plaintiff did not receive this treatment.
21. Dr. Mingle testified, and the Full Commission finds as fact, that plaintiff's myofacial pain syndrome may have been caused by a vast number of different things, including plaintiff's box unloading incident of September 21, 2002, but also including things as simple as wearing high heel shoes or poor posture. Dr. Mingle was unable to state whether plaintiff's September 2001 accident was the cause of the condition for which he had treated plaintiff beginning in August 2002.
22. With the exception of Dr. Mingle's note taking plaintiff out of work for two to four weeks to receive therapy, no doctor offered an opinion that plaintiff has been unable to work since January 8, 2002. Plaintiff offered no evidence of a reasonable job search to find work within her restrictions or that such a job search would be futile due to preexisting conditions. *Page 7 
23. Based upon the greater weight of the competent medical evidence of record, the back conditions with which plaintiff was diagnosed by Drs. del Genovese, Twadell, and Pinnell, and for which plaintiff received chiropractic and medical treatment from October 2001 to December 2001, are causally related to her September 21, 2001, incident at work. However, plaintiff has failed to present evidence sufficient to show that the myofacial pain syndrome with which plaintiff was diagnosed by Dr. Mingle and for which plaintiff was treated beginning in August 2002 is causally related to plaintiff's September 21, 2001, incident at work.
24. Plaintiff was temporarily totally disabled from October 5, 2001, until she returned to work in November 2001. Plaintiff has failed to show that she has been totally disabled since she removed herself from employment on January 8, 2002.
25. The Full Commission finds reasonable plaintiff's belief that defendant-employer's knowledge of her September 21, 2001, workplace incident was sufficient to meet the requirements of reporting the incident. Defendants have failed to show that they were prejudiced by plaintiff's failure to provide written notice of her workplace incident prior to February 4, 2002.
26. Defendants did not defend this claim without reasonable ground.
 * * * * * * * * * * *Page 8 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by specific traumatic incident arising out of and in the course of her employment on September 21, 2001. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes a causal relationship between the work-related incident on September 21, 2001, and the back conditions for which plaintiff received treatment during October, November, and December 2001. N.C. Gen. Stat. § 97-2(6).
3. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $122.55 per week for the period from October 5, 2001, until plaintiff returned to work in November 2001. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of medical expenses incurred as a result of the compensable injury between October 2001 and December 2001 as may reasonably have been required to effect a cure, provide relief, or lessen the period of plaintiff's disability. N.C. Gen. Stat. §§97-2(19); 97-25.
5. Although plaintiff has failed to show that defendants received written notice of the September 21, 2001, workplace accident within 30 days as required under N.C. Gen. Stat. § 97-22, the Full Commission finds reasonable plaintiff's belief that defendant-employer was sufficiently aware of the incident by virtue of plaintiff's timely informing Ms. Wells of the incident and plaintiff's subsequent being taken out of work for medical treatment as a result of the injury. See Lakey v. U.S. Airways,Inc., 155 N.C. App. 169, 172, 573 S.E.2d 703, 706 (2002), disc.review denied, 357 N.C. 251, 582 S.E.2d 271 (2003) ("Failure of an employee to *Page 9 
provide written notice of her injury will not bar her claim where the employer has actual knowledge of her injury.")
6. Because the evidence of record shows that defendant-carrier would not have begun investigating an alleged workplace injury by accident until receipt of a plaintiff's Form 18 or attorney letter of representation, regardless of when it might have received written notice of the accident pursuant to N.C. Gen. Stat. § 97-22; and because plaintiff's Form 18 in the present action was timely filed within two years of the September 21, 2001, workplace incident pursuant to N.C. Gen. Stat. § 97-24; the Full Commission concludes that defendants were not prejudiced by plaintiff's failure to provide timely written notice within 30 days of September 21, 2001, because even had timely written notice been provided by plaintiff, defendant-carrier still would not have begun its investigation until its apparent receipt on April 23, 2002, of plaintiff's Form 18. See Westbrooks v. Bowes, 130 N.C. App. 517, 528,503 S.E.2d 409, 417 (1998) ("The burden is on the defendant to show that it was prejudiced" by a plaintiff's failure to comply with N.C. Gen. Stat. § 97-22).
7. Plaintiff is not entitled to attorney fees. N.C. Gen. Stat. §97-88.1.
 * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $122.55 per week for the period from October 5, 2001, until plaintiff returned to work in November 2001. Because this compensation has accrued, it shall be paid in a lump sum. *Page 10 
2. Defendants shall pay for medical expenses incurred as a result of the compensable injury between October 2001 and December 2001 as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. Plaintiff's request for attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 is denied.
4. A reasonable attorney fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from the lump sum due plaintiff under Paragraph 1 herein and paid directly to plaintiff's counsel in one lump sum.
5. Defendants shall pay the costs due the Commission.
This the 8th day of June, 2007.
 S/________________
 BUCK LATTIMORE
 CHAIRMAN.
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/________________ PAMELA T. YOUNG. COMMISSIONER *Page 1