***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments of the parties. With reference to the errors assigned by plaintiff, the Full Commission finds that plaintiff has not shown good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives. With reference to the errors assigned by defendants, the Full Commission finds that defendants have not shown good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES *Page 2 
1. Whether plaintiff sustained a compensable back injury in the form of a specific traumatic incident and if so, to what compensation, if any, is he entitled?
2. Whether plaintiff's claim is barred pursuant to N.C. Gen. Stat. § 97-22?
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and subject matter.
2. Plaintiff is Mr. David Sturgill.
3. Defendant-employer is Bradford Products.
4. Defendant-Carrier at the time of plaintiff's alleged injury was The Hartford.
5. Defendant-employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act. An employment relationship existed between defendant-employer and plaintiff on June 6, 2005.
6. On or about June 6, 2005, plaintiff was working for defendant-employer as a welder.
7. Plaintiff's average weekly wage as of June 6, 2005 was $1,030.01.
8. An attachment to the Pre-trial Agreement contains a summary of the days plaintiff has missed work since the alleged date of injury.
 *********** EXHIBITS *Page 3 
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit (1): An Executed Pre-trial Agreement;
 • Exhibit (2): Industrial Commission forms and filings;
 • Exhibit (3): Documentation of average weekly wage and wages received after the alleged date of injury;
 • Exhibit (4): Discovery responses;
 • Exhibit (5): Defendant-employer's shop sign;
 • Exhibit (6): Defendant-employer's OSHA logs for 2005;
 • Exhibit (7): Employment Security Commission documents;
 • Exhibit (8): Correspondence from Ms. Cindy Brodeur dated May 5, 2006;
 • Exhibit (9): Wage detail and envelope from defendant-employer;
 • Exhibit (10): Loan documentation and;
 • Exhibit (11): Plaintiff's medical records.
Also made part of the record are transcripts of the depositions of Dr. Mark Rodger (with Plaintiff's Exhibit 1), Dr. Donald Getz (with Defendants' Exhibits A through C and Plaintiff's Exhibit A) and Stanley Weiss, P.A.
 *********** EVIDENTIARY RULINGS
Via correspondence dated August 22, 2008, after the parties' submission of their Contentions, plaintiff moved to have an addendum to his Contentions, along with a copy of an email from plaintiff's counsel to defendants' counsel dated April 7, 2008, received as part of the record. Defendants objected. Plaintiff's Motion is now HEREBY GRANTED. The addendum *Page 4 
is hereby incorporated into plaintiff's Contentions, and the email is hereby marked as Plaintiff's Exhibit (1).
During the deposition of Dr. Donald Getz, plaintiff moved to have a transcript of Dr. Getz's trial testimony in a Superior Court case considered as impeachment evidence. This trial transcript was marked as Plaintiff's Exhibit A to Dr. Getz's deposition transcript in this claim. Defendants objected to the consideration of the trial transcript as impeachment evidence. Plaintiff's Motion is now GRANTED, and the trial transcript is hereby received as impeachment evidence.
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began his employment with defendant-employer in 2003 and worked there as a welder until August 11, 2006. Defendant-employer builds hot tubs and spas.
2. Plaintiff has a long history of back problems and chronic back pain. In September 1998, he underwent a microdiscectomy performed by Dr. Mark Rodger in order to repair a right-sided herniation at L5-S1. Following surgery, plaintiff's right leg symptoms improved. In March 2002, plaintiff was diagnosed with left-sided sciatica after a fall. Throughout the period from his 1998 surgery until June 2005, plaintiff had chronic back pain and used pain medications to help control it. Additionally, during the entire time he worked for defendant-employer, plaintiff reported his chronic back pain symptoms.
3. On June 1, 2005, plaintiff presented to his family physician, Dr. Alan L. Jackson, with complaints of back pain and pain radiating down his left leg. Dr. Jackson diagnosed *Page 5 
sciatica and chronic back pain secondary to the 1998 surgery, and recommended a lumbar MRI and nerve conduction study. Plaintiff did not mention any work injury at this appointment.
4. As detailed below, plaintiff continued receiving treatment for his lower back symptoms, including the pain radiating down his left leg. Over the 15 months following his June 1, 2005 visit to Dr. Jackson, plaintiff never told any provider, nor did he state on any intake questionnaire, that he suffered any work injury. Also, plaintiff did not describe any mechanism of injury. Plaintiff's first mention to a medical provider of any alleged work injury was on August 30, 2006.
6. On June 28, 2005, plaintiff sought treatment for back and left leg pain at a joint chiropractic/physical medicine clinic. Plaintiff was diagnosed with a disc herniation at an unspecified level.
7. On July 5, 2005, plaintiff returned to Dr. Jackson with continuing complaints of back pain and radiating symptoms.
8. On July 7, 2005, plaintiff presented to Dr. Rodger with the same back and radiating complaints. The MRI revealed a central disc herniation at L4-5, with no recurrence at L5-S1. Dr. Rodger then initiated conservative treatment for plaintiff with his colleague, Dr. Francis Pecoraro.
9. Conservative treatment failed, and plaintiff then underwent a microdiscectomy at L4-5 performed by Dr. Rodger on September 6, 2005.
10. Plaintiff was out of work for more than two months after this surgery. Plaintiff then returned to work for defendant-employer at light duty.
11. Plaintiff did not fare well with his back pain after the 2005 surgery. On June 12, 2006, plaintiff informed Dr. Pecoraro that because of his pain, he was unable to work. *Page 6 
12. In early August 2006, plaintiff was at work when he noticed an accident report for a co-worker and asked his supervisor, Mr. Tony Woodard, and one of defendant-employer's plant managers, Mr. Dale Brodeur, why no accident report had been completed for his back injury. Both Mr. Woodard and Mr. Brodeur were shocked by plaintiff's question, and Mr. Brodeur became angry.
13. Plaintiff testified that on the day of his alleged injury, he verbally informed both Mr. Woodard and Mr. Brodeur that he slipped while welding in a hot tub and that his back was sore. Both Mr. Woodard and Mr. Brodeur denied that plaintiff ever told them about any work injury before the exchange in early August 2006.
14. On August 11, 2006, defendant-employer terminated plaintiff's employment, ostensibly because plaintiff could no longer perform his duties as a welder.
15. On August 30, 2006, plaintiff returned to Dr. Rodger and for the first time, attributed his L4-5 herniation to an alleged, unspecified work injury that occurred in the summer of 2005.
16. On September 21, 2006, plaintiff filed an Industrial Commission Form 18 alleging that he hurt his back on or about June 7, 2005. This was the first written notice that plaintiff provided of the alleged work injury.
17. On January 25, 2007, plaintiff described to Dr. Rodger the incident he (plaintiff) believed caused his L4-5 herniation. Plaintiff stated that he was twisting while doing welding and his left foot slipped, creating a torsional rotation of his back.
Dr. Rodger testified that plaintiff's L4-5 herniation was caused by the incident plaintiff described to him as having occurred at work. Dr. Rodger's causation opinion was premised on *Page 7 
the actual occurrence of a specific traumatic incident, as described to Dr. Rodger by plaintiff on January 25, 2007.
18. In his Industrial Commission Form 33, plaintiff alleged that the date of injury was June 6, 2005. Plaintiff continued to adhere to this date through discovery and the hearing. Plaintiff testified that he pinpointed June 6, 2005 because records show that he took the day off on June 7, 2005, and he knew he had taken off of work the day after the incident occurred.
19. Dr. Rodger testified that plaintiff's L4-5 herniation had to have occurred sometime before plaintiff's visit to Dr. Jackson on June 1, 2005, and opined that the injury must have occurred "sometime in May."
20. Based upon plaintiff's testimony and that of his former co-worker, Mr. Mike Parker, the Full Commission finds that some incident occurred at work in early June 2005 in which plaintiff slipped in a tub and experienced back pain.
21. The Full Commission gives great weight to the testimony of Dr. Rodger on when the herniated disc occurred and finds that plaintiff sustained his L4-5 disc herniation prior to June 1, 2005. Plaintiff's contention that the slip in the tub incident caused his herniated disc is unpersuasive considering the medical evidence showing that he had complaints of back pain radiating into his left leg on June 1, 2005. Additionally, although plaintiff had many doctor's visits over the 15 months following the incident, it was only after defendant-employer terminated his employment that he attempted to connect the incident with his L4-5 herniation.
22. Although the Full Commission finds as fact that some incident occurred in on June 6, 2005 where Plaintiff slipped in a tub and experienced back pain, there is insufficient credible lay and medical evidence of record to prove that plaintiff's L4-5 disc herniation or any of his lower back symptoms are causally related to this incident. *Page 8 
23. The delay by plaintiff in providing defendants with written notice of his claim of a June 6, 2005 workplace injury is reasonably excused, given his belief that he verbally reported the slip in the tub incident to his supervisor on or about the date of its occurrence, his prior medical history regarding his back, and the credible evidence of record that an incident involving plaintiff did occur at work in early June 2005.
24. There is insufficient evidence upon which to conclude that defendants were prejudiced by plaintiff's delay in providing written notice of his claim of a June 6, 2005 workplace injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. An employee may be excused from the notice requirement if he has a reasonable excuse for not giving notice and defendants are not prejudiced by the delay. N.C. Gen. Stat. § 97-22; Westbrooks v.Bowes, 130 N.C. App. 517, 503 S.E.2d 409 (1998). In this matter, the delay by plaintiff in providing defendants with written notice of his claim is reasonably excused given his belief that he verbally reported it to his supervisor on or about the date of its occurrence, his prior medical history regarding his back, and the credible evidence of record that an incident involving plaintiff did occur at work in early June 2005. Id. Additionally, there is insufficient evidence upon which to conclude that defendants were prejudiced by plaintiff's delay in providing written notice of his claim of a June 6, 2005 workplace injury. Id. Accordingly, plaintiff's claim for compensation is not barred. Id. *Page 9 
2. While the Full Commission concludes that plaintiff has proven that some incident occurred in early June 2005, plaintiff has not carried his burden to show that the L4-5 disc herniation or any of his lower back symptoms are causally related to any such incident. N.C. Gen. Stat. § 97-2(6); Young v. Hickory Bus. Furn., 353 N.C. 277, 538 S.E.2d 912
(2000); Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
3. Since Plaintiff has not proven that his L4-5 disc herniation or any of his lower back symptoms are related to any specific traumatic incident that occurred in or about early June 2005, he is not entitled to indemnity or medical compensation under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(6); 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim must, under the law, be and hereby is DENIED.
2. Each side shall bear its own costs. As part of their costs, if they have not done so already, defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $224.00 to Mr. Stanley Weiss and $1,377.50 to Dr. Donald Getz. It is noted that, via an Order filed earlier in this matter, the Deputy Commissioner already set an expert witness fee of $600.00 for Dr. Mark Rodger.
This the __ day of July 2009.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER